TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Appellant's Brief In Support Of COA I
DATE: 11/29/2021 07:04:03 PM

...

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DEC 06 2021

FILED
DOCKETED

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

...
...

No. 21-56241

...
...

STANLEY DAN RECZKO, III,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

...
...

Originating Case Information: U.S. District Court, Central District of California, Case No. 2:21-cv-05127-ODW

...
...

---

APPELLANT'S BRIEF IN SUPPORT OF CERTIFICATE OF APPEALABILITY

ATTACHMENTS
pages 1-76

...
...

Executed on: November 29, 2021

(x) Stanley D. Reczko III

Mr. Stanley Dan Reczko, III
Prisoner ID No. 45243112
U.S. Penitentiary
P.O. Box 24550
Tucson, Arizona 85734

...
...

QUESTIONS PRESENTED

...
...

1. Was the district court's October 18, 2021 order denying the petition for writ of habeas corpus to vacate convictions and sentence under 28 U.S.C. Section 2255 (Section 2255 petition) on the merits and failure to determine whether a certificate of appealability should issue wrong or debatable?

...

2. Was the district court's reference to "Mick Jagger of the Rolling Stones, 1969" as part of its October 18, 2021 order an abuse of discretion?

...
...

3. Was the district court's failure to consider the controverting material facts and supporting evidence in appellant's traverse

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------------

prior to its October 18, 2021 order wrong or debatable?

...

...

4. Was the district court's November 2, 2021 order denying the appellant's Emergency Motion To Alter/Amend And/Or Reconsider 10/18/21 Order a manifest error of fact and/or law?

...

...

5. In the context of the district court's October 18, 2021 reference to "Mick Jagger of the Rolling Stones, 1969" was the district court's November 2, 2021 "frivol[ity]" conclusion with respect to appellant's Emergency Motion To Alter/Amend And/Or Reconsider 10/18/21 Order an abuse of discretion in violation of judicial decorum?

...

...

## JURISDICTION

...

...

 The jurisdiction of the district court was founded upon 28 U.S.C. Section 1331, and Section 2255. The jurisdiction of this Court is founded upon 28 U.S.C. Section 1291, Section 2253(c), and is based on the following particulars:

Decision Sought To Be Reviewed: October 18, 2021 order denying Section 2255 petition and November 2, 2021 order denying Emergency Motion To Alter/Amend And/Or Reconsider 10/18/21 Order;

Date Notice of Appeal Was Filed: November 8, 2021.

...

...

## TABLE OF AUTHORITIES

### Organic

Amendment IV, Probable Cause Requirement

Amendment VI, Assistance of Counsel Clause

Amendment V, Due Process Clause

### Statutes

18 U.S.C. Section 3181

18 U.S.C. Section 3187

28 U.S.C. Section 2255

### Cases

Draper v. Coombs, 792 F.2d 915, 920 (9th Cir. 1986)

Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968)

Erickson v. Pardus, 551 U.S. 89, 94 (2007)

Evitts v. Lucey, 469 U.S. 387, 396 (1985)

George v. Edholm, 752 F.3d 1206, 1215 (9th Cir. 2013)

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-------------------------------------------------------------------------------------------

Harris v. Nelson, 394 U.S. 286, 292, 300 (1969)

Hernandez v. Skinner, 2020 U.S. App. LEXIS 25183, Id. at 12 n. 2 (9th Cir. 2020)

Hinton v. Alabama, 571 U.S. 263, 274 (2014)

Indiana v. Edwards, 554 U.S. 164, 174-178 (2008)

Kimmelman v. Morrison, 477 U.S. 365, 385 (1986)

Reid v. Covert, 354 U.S. 1, 9 (1957)

United States v. Barton, 995 F.2d 931, 935 (9th Cir. 1993)

United States v. Krueger, 741 Fed. Appx. 517, 518 (9th Cir. 2018)

United States v. Reed, 918 F.3d 712, 721 (9th Cir. 2019)

United States v. Scott, 642 F.3d 791, 799 (9th Cir. 2011)

...
...

## STATEMENT OF THE FACTS

On June 21, 2021, appellant filed the Section 2255 petition below. R. 1. The petition raised four grounds for potential relief:

1. Trial counsel's failure to file a Motion To Dismiss The Indictment for the United States' violation of the Extradition Act, 18 U.S.C. Section 3181, et seq., was an unconstitutionally deficient performance that caused prejudice because the motion would have been meritorious, and no reasonable juror would be able to find appellant guilty on charges that were dismissed as a matter of law prior to trial;

2. Trial counsel's failure to competently litigate the unreasonable seizure of appellant's person on July 2, 2007 was an unconstitutionally deficient performance that caused prejudice because the motion would have been meritorious, and no reasonable juror would be able to find appellant guilty on a quashed arrest and suppressed evidence as a matter of law prior to trial;

3. Trial counsel's failure to file a motion to dismiss the indictment for the United States' presentation of false evidence during the briefing of trial counsel's motion to suppress (that did not challenge the July 2, 2007 seizure) was an unconstitutionally deficient performance that caused prejudice because the motion would have been meritorious, and no reasonable juror would be able to find appellant guilty on charges that were dismissed as a matter of law prior to trial; and,

4. Appellate counsel's failure to file an Open Brief properly attacking the district court's September 9, 2013 order allowing appellant to represent himself was an unconstitutionally deficient performance that caused prejudice by depriving appellant of the most prevailing argument he could have raised on appeal, and thus a favorable outcome on appeal.

This case centers on whether U.S. Homeland Security Immigration Customs Enforcement (ICE) induced, coerced, promoted, or encouraged a private party, International Justice Mission (IJM), to unreasonable seize appellant's person on July 2, 2007 in violation of 18 U.S.C. Section 3181, Section 3187, and the probable cause requirement.

On June 25, 2021, the district court entered an order requiring the United States to file its return, accompanied by all records, by July 12, 2021, for appellant to file his traverse to the return by August 2, 2021, and concluded "NO FURTHER EXTENSIONS OF TIME WILL BE GRANTED EXCEPT UNDER EXTRAORDINARY CIRCUMSTANCES". R. 3. On July 7, 2021, the United States requested by ex parte application until September 10, 2021 to file its return, R. 5, and on July 8, 2021, the district court granted that extension of time. R. 6. On or about July 1, 2021, appellant mailed a Motion For Restriction Of Time To Return To 2255 Motion, R. 11, based on the United States July 7, 2021 Declaration attached to the ex part application, R. 5, being submitted in bad faith - as all the necessary records were electronically available.

· · ·

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

However, before the Motion For Restriction Of Time arrived to the Court, on July 22, 2021 the United States filed another ex parte application seeking waiver of attorney-client privilege, R. 8, which the district court granted on July 26, 2021. R. 10. On July 26, 2021, the Motion For Restriction Of Time was finally filed, R. 11, and on August 3, 2021 the district court denied the motion. R. 12. On September 1, 2021, appellant filed a notice explaining the delay between the date the Motion For Restriction Of Time was mailed and the date it was received and filed, which was construed as a "letter" by the district court. R. 13. The notice clarified that at the time the Motion For Restriction of Time was mailed, appellant had not been notified of the ex parte application, R. 8, order authorizing attorney-client privilege waiver, R. 10, and thus did not submit the Motion For Restriction of Time in bad faith.

On September 2, 2021, the United States filed its Opposition to the Section 2255 petition (Return), R. 14, and took the central position on the merits that ICE was not encouraging and/or promoting IJM to execute the July 2, 2007 arrest. The return, citing a Declaration from ICE agent Briola and IJM agent Purviance, submitted that IJM is a private party, not an extension of the United States. R. 14, Pages 13-15. The return went on to claim that trial counsel was not ineffective for not filing a Motion To Dismiss under the Extradition Act, because that motion would have been meritless, as appellant was not extradited - but was "summarily deported" by the Philippines over 75 days after the unreasonable July 2, 2007 arrest. The return did not acknowledge Section 3187's requirement of an indictment and/or affidavit to execute a provisional arrest abroad. The return further stated appellant's trial counsel did competently litigate the July 2, 2007 arrest because counsel filed a Motion To Suppress challenging the search of appellant's hotel room. The return also in accurately stated that the evidence obtained from the hotel was not used to convict appellant at trial, and thus the July 2, 2007 seizure was essentially harmless.

On September 17, 2021, appellant filed a Motion For Enlargement of Time To File Traverse, R. 15, which the district court granted on September 27, 2021, R. 16, providing appellant until October 15, 2021 to file his traverse. On September 30, 2021, appellant mailed his traverse in opposition to respondent's return to petition for writ of habeas corpus to vacate convictions and sentence under section 2255 to the district court by certified mail. The traverse is (7) pages, with 332 Pages of Appendices. On October 14, 2021, appellant asked a third party to check the docket on www.pacer.gov to confirm that the traverse was received and filed in light of the above referenced delay with the Motion For Restriction Of Time, and as of that date, no traverse was filed. However, the certified mail tracking results for no. 7021 0350 0002 0434 6021, showed the traverse was delivered on October 4, 2021.

Between October 15, 2021 - October 23, 2021, appellant asked a third party to call the district court the find out why the traverse was not filed, and that third party received no straight answers and/or confirmation it was received. On or about October 24, 2021, appellant received the district court's October 18, 2021 order denying the 2255 petition, apparently without considering the traverse, and without convening an evidentiary hearing. R. 17. On October 24, 2021, appellant mailed an Emergency Motion To Alter/Amend And/Or Reconsider 10/18/21 Order claiming that based on the certified mail tracking results, and PACER, someone must have intercepted the traverse from the clerk's office, and that the district court should vacate its October 18, 2021 order and consider the traverse.

On November 2, 2021, the Emergency Motion was filed, R. 19, and on the same day, the district court denied the motion, R. 20, claiming that "a reading of the Order in question clearly indicates that the Court had received and read the traverse. Indeed, in that Order, the Court listed no fewer than five claims Defendant made in it traverse. (See Order of October 18, 2021 at p 2.)" R. 20, Page 3, Id. at 7-9. The traverse did not present "five claims" for rebuttal of the return - it replied with a statement of the undisputed facts, controverting facts, and two points of law honing in on the Fourth Amendment claim, the competency to pro se. Further,  Page 2 of R. 17 says nothing about the traverse. The internal docket attached herewith, shows the traverse was filed on October 25, 2021, seven days after the district court entered its October 18, 2021 order denying the Section 2255 petition. On November 8, 2021, appellant filed his notice of appeal, this brief follows.

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Appellant's Brief In Support Of COA II
DATE: 11/29/2021 07:04:15 PM

...

POINTS OF LAW & AUTHORITIES & REASONS WHY THE DISTRICT COURT'S
OCTOBER 18, 2021 ORDER SHOULD BE REVERSED/VACATED OR
WHY A CERTIFICATE OF APPEALABILITY SHOULD ISSUE

Appellant respectfully contends that regardless of whether the district court mishandled the traverse, failed to consider the traverse (as well as supporting exhibits), and masked that omission in its November 2, 2021 order denying the Emergency Motion, the result is still the same: the October 18, 2021 order denying the Section 2255 petition is wrong, or at the very least debatable, and upholds the denial of two fundamental constitutional rights.

In George v. Edholm, 752 F.3d 1206 (9th Cir. 2013), this Court explicitly reaffirmed that "[a] private party's search may be attributed to the state when the private party acted as an instrument or agent of the Government in conducting the search [or seizure]." Id. at 1215. Because the United States' return relied on two declarations (ICE Briola & IJM Purviance) to claim that ICE was not running the operations that led to appellant's arrest on July 2, 2007, appellant submitted Appendices A - U to the traverse for the purpose of directly contradicting those two declarations, and to show ICE was promoting and encouraging IJM's activities as far back as May 2007. The traverse caused significant material factual dispute, worthy of at least holding an evidentiary hearing on the merits. Appellant further showed through documents obtained directly from the Philippines and U.S. Homeland Security that IJM was in fact taking direct orders from ICE with respect to appellant's arrest. Nonetheless, the district court merely copied/pasted about 3 pages of the United States' return into its October 18, 2021 order and made no mention whatsoever of the Appendices A - U attached to the traverse showing the two declarations in the return were patently false. *SEE (A - U) Attachments*

The only original writing from the district court in its October 18, 2021 order appears to be its recitation of the procedural background, its criticism of appellant's citation to United States v. Tucker, 404 U.S. 443, 447 (1972) and United States v. Barton, 995 F.2d 931, 935 (9th Cir. 1993) in the memorandum of law attached to the Section 2255 petition (where appellant was pointing to the right to be sentenced on accurate information and Brady being applied to suppression motion/hearings in the Ninth Circuit), and the conclusion where it cites "Mick Jagger of the Rolling Stones, 1969". Everything else in the October 18, 2021 Order appears to be about 3 Pages quoted from the United States' return. The return was filed on September 2, 2021, thus copying about 3 Pages from it, without addressing the merits of the evidence filed with the traverse on October 25, 2021, that directly contradicts the return, shows the district court did not actually consider the clear and convincing evidence that IJM was acting as an instrument of ICE when ruling on the merits.

Appellant respectfully submits this shows a substantial denial of the right to effective assistance of counsel as well as the right to be free from unreasonable searches and seizures, and the October 18, 2021 order is therefore wrong or debatable should be reversed and/or vacated, or a certificate of appealability should issue. See, Kimmelman v. Morrison, 477 U.S. 365, 385 (1986); Harris v. Nelson, 394 U.S. 286, 292, 300 (1969); Hernandez v. Skinner, 2020 U.S. App. LEXIS 25183, Id. at 12 n. 2 (9th Cir. 2020); Durham v. United States, 403 F.2d 190, 193 (9th Cir. 1968)(citing Sgro v. United States, 287 U.S. 206, 210 (1932)); Reid v. Covert, 354 U.S. 1, 9 (1957); United States v. Renzi, 769 F. 3d 731, 751 (9th Cir. 2014); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

On the ineffective assistance of appellate counsel claim for failure to challenge the district court's September 9, 2013 order allowing appellant to proceed pro se, the return merely claimed that appellate counsel's argument that appellant was constructively denied counsel on direct appeal was sufficient, and was not an objectively unreasonable performance. What the return omitted is that every scant report by Dr. Lisa Hope was used as the basis for the September 9, 2013 decision, after over 5.5 years of consistent findings by a different psychologist, Dr. Faerstein, showed appellant was competent to proceed to trial, but not competent to represent himself. The district court's October 18, 2021 order failed to address this critical difference between standards of competency, how Indiana v. Edwards, 554 U.S. 164, 174-178 (2008) was run afoul by appellate counsel's failure to challenge the September 9, 2013 decision on appeal, and how that prejudiced appellant through the loss of his due process right to a fair trial - where he broke down and handed the wheel to standby counsel just as trial began - as opposed to having an experienced trial lawyer thoroughly prepared for trial months beforehand.

Put differently, appellant showed how appellate counsel's failure to challenge the September 9, 2013 order under Edwards deprived appellant of a potentially meritorious direct appeal, and where the judgment could have been vacated and remanded for a new trial with properly prepared counsel appointed. This Court has "identified several considerations that bear on the

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

Edwards inquiry." United States v. Reed, 918 F.3d 712, 721 (9th Cir. 2019). One critical factor "is the psychiatric evidence. Reports evaluating whether a defendant meets the lesser standard of competency to stand trial 'are of limited value.'" Id. However, "reports evaluating whether the defendant can represent himself ... are more helpful." And, "[a]nother issue is the defendant's behavior. Behavior that is ... disruptive or defiant weighs in favor of appointing counsel." Id. Once again, these specific prongs of the controlling legal standard went effectively unaddressed in the district court's October 18, 2021 order. See also, Evitts v. Lucey, 469 U.S. 387, 396 (1985); and Hinton v. Alabama, 571 U.S. 263, 274 (2014). That decision is therefore wrong or debatable, should be reversed and/or vacated, or a certificate of appealability should issue.

Lastly, the district court's conclusion in the October 18, 2021 order referred to "Mick Jagger of the Rolling Stones, 1969" and quoted a portion of the lyrics to the song "You Can't Always Get What You Want". That, in combination with the district court's suspicious handling of the traverse, and the November 2, 2021 order concluding appellant's claim in his Emergency Motion that his traverse was "intercepted" (and not considered based on the certified mail tracking results and PACER) wAS a frivolous waste of the court's time and resources are respectfully identified as violations of judicial decorum, Harris v. Nelson, 394 U.S. 286, 292, 300 (1969), and Erickson v. Pardus, 551 U.S. 89, 94 (2007). Also the district court's November 2, 2021 contains a sarcastic and/or facetious statement about its appreciation how appellant has plenty of time on his hands to file several motions (after reciting that appellant has a life sentence).

In United States v. Krueger, 741 Fed. Appx. 517 (9th Cir. 2018), this Court strictly observed "Krueger began his allocution by apologizing to the district court. The district court almost immediately interrupted him, stating, 'No, no, listen, please, you are already kind of ahead on points. If you start throwing B.S. up here, things are going to change' ... we grant Krueger's request that this matter be reassigned to a different district judge for resentencing." Id. at 518. Although Krueger was deprived of the right to allocute, the conduct by the same district judge is demonstrative in comparison with the comments in the above stated orders below. Additionally, "[a]lthough many of the judge's comments and interventions were inconsistent with standard of judicial decorum, we nevertheless conclude that they did not rise to the level that requires reversal." United States v. Scott, 642 F.3d 791, 799 (9th Cir. 2011). Appellant does not request reversal upon the lack of judicial decorum cited above, however if the Court reverses, vacates, or issues a certificate of appealability, appellant does respectfully request that the action below be reassigned to a different district judge.

## CONCLUSION

   Wherefore appellant prays that this Honorable Court reverses, vacates, or issues a certificate of appealability for the foregoing reasons.

   Respectfully Submitted,

x _____     Date: 11/29/2021

   Mr. Stanley Dan Reczko, III

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

----------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Petitioner's Traverse In Opposition To Return
DATE: 09/28/2021 10:09:19 AM

...

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

STANLEY DAN RECZKO, III,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. 2:21-cv-5127-ODW

Honorable Otis D. Wright, II

*ATTACHED APPENDICES*
(
*A - U*

PETITIONER'S TRAVERSE IN OPPOSITION TO RESPONDENT'S RETURN
TO PETITION FOR WRIT OF HABEAS CORPUS TO VACATE CONVICTIONS
AND SENTENCE UNDER 28 U.S.C. SECTION 2255

---

The Petitioner, respectfully submits this traverse in opposition to the respondent's return ("the return"), [DE-14] in opposition to petitioner's petition for writ of habeas corpus to vacate convictions and sentence under 28 U.S.C. Section 2255 as follows:

STATEMENT OF THE UNDISPUTED FACTS

The return admits that petitioner's pretrial counsel failed to file a motion to dismiss the indictment under the Extradition Act, 18 U.S.C. Section 3183, 3187. [DE-14], Page 8, Id. 2-4.

The return admits that petitioner's pretrial counsel failed to file a motion to quash the unreasonable July 2, 2007 seizure and only challenged the search of petitioner's luggage stored at a hotel thereafter. [DE-14], Page 8, Id. at 7-8.

The return admits that petitioner's pretrial counsel failed to file a motion to dismiss for knowing presentation of false evidence during the briefing of the inadequate motion to suppress above stated. [DE-14], Page 8, Id. at 24-26

The return admits the United States induced, coerced, promoted, and/or encouraged the unreasonable seizure of petitioner's natural body on July 2, 2007 abroad, and subsequent searches of petitioner's luggage to obtain incriminating evidence, through its adoption of IJM's private actions by failing to deny the that Homeland Security Investigations agent Olga Sagalovich adopted IJM's actions in full through their incorporation into the criminal complaint. See, Criminal Docket Entry 1, Paragraphs 31 - 35. [DE-14], Page 12, Id. at 12-13; Id. at 23-25; and Page 13, Id. at 6 through Page 15, Id. at 16 (not one mention of the criminal complaint adopting all of IJM, Orate, and Briola's actions between May and July 2007)

The return admits that Sagalovich had knowledge of the incriminating disk prior to September 2007 (showing U.S. oversight, support, involvement, promotion, and encouragement) as she was searching for documents relating to the specific timeline of petitioner's travel between Los Angeles and the Philippines from January 2006 through September 2007. [DE-14], Page 20, Id. at 22 through Page 21, Id. at 1-5 ("she searched petitioner's luggage on his return to Los Angeles and founded a letter to the United Nations ... describing the timeline of travel between January 2006 through September 2007")

The return admits there was conflicting conclusions about petitioner's ability to represent himself, and that the standard used to determine if petitioner was mentally competent to stand trial was used to determine if petitioner was capable of representing himself. [DE-14], Page 16, n. 4 through Page 18, Id. at 1-9.

STATEMENT OF CONTRADICTING MATERIAL FACTS SUPPORTED BY APPENDICES A - Z

① OF 339

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

On May 15, 2007, International Justice Mission (IJM) agent Purviance wrote a letter to U.S. Immigration Customs Enforcement (ICE) Special Agent Briola, asking to refer a case to the United States. More specifically, "we respectfully request your assistance in further investigating this incident and in facilitating the arrest and prosecution." See, Appendix A.

On May 18, 2007, IJM agent Purviance wrote a letter to Cebu Grand Hotel Operations Manager Ronaldo Puzon asking for all records and information pertaining to petitioner from "January 2005 to present", that there was an investigation under the "U.S. Protect Act", and that "all records and information supplied by you shall be endorsed to the United States Department of Homeland Security and the U.S. Department of Justice for evaluation and custody. See, Appendix B1 and B2.

On May 24, 2007, IJM filed an internal preliminary report showing the "Incident Type" was "in Violation of the U.S. Protect Act, 2003". See, Appendix C.

On January 10, 2008, IJM published on their official website, www.ijm.org, that "IJM worked closely with Philippine and U.S. authorities to locate the perpetrator under the auspices of the PROTECT Act, the U.S. law that makes sexual offenses committed against minors abroad by American citizens punishable in U.S. courts." Appendix D.

On May 24, 2007, IJM filed an internal report showing "Authorities Notified" listing "Special Agent Julian S. BRIOLA, Senior Special Agent, 05/11/2007 1400 hours, U.S. Embassy Manila, U.S. Immigration and Customs Enforcement" and "IJM Action Taken" listing "6. Investigations Team notified, gained the support of, and mobilized the U.S. Immigration and Customs Enforcement (ICE), Manila, to act on behalf of Victim []. 7. Investigations Team turned all evidence over to the custody of U.S. ICE, Manila." See, Appendix E.

On or about June 1, 2007, Assistant U.S. Attorneys, John J. Lulejian and Christine C. Ewell, drafted and signed by their hand their initials on a fabricated, unsigned, unathuenticated, and unfiled indictment, presumably for the purpose of misleading Philippine authorities and/or a U.S. District Court into the belief that the Extradition Act, 18 U.S.C. Sections 3183, 3187, were being complied with. See, Appendix F.

On June 12, 2007, ICE agent Briola wrote a letter for ICE attache at Manila to the Philipine Commissioner of the Bureau of Immigration (BID) informing them of an ICE investigation of petitioner under the Child Protect Act abnd asking them "to act upon [the information] and as you deem appropriate." The letter further states that "Sr. Special Agent Julian Briola, who can be reached at, cell no. 0917-830-2336" as the "point of contact". See, Appendix G.

On June 20, 2007, BID attorney Edgardo I. Mendoza faxed correspondence to ICE Briola stating he forwarded Briola's June 12, 2007 letter, Appendix G, to the appropriate Philippine officials citing "Theodore C. Lopez, Deputy Immigration and Customs Enforcement Attache, U.S. Department of Homeland Security" regarding the case". See, Appendix H.

On June 22, 2007, a mission order was entered by the Philippine Bureau of Immigration (PBI) for strict compliance authorizing a "1. Conduct verification/validation on the admission status and activities of said foreign national and effect the immediate arrest if found to have violated the Philippine Immigration Act of 1940, as amended. 2. Valid for (7) days from date of approval [June 22, 2007-June 29, 2007]"(Petitioner was unreasonably seized on July 2, 2007). See, Appendix I.

On December 15, 2008, PBI published an internal memorandum order describing the Immigration Act of 1940, as amended by Amendment Order No. ADD-01-035 dated 22 August 2001. See Rule VII-a. Summary Deportation, presented solely for informational purposes and in the interests of completeness. See Appendix J.

On June 3, 2007, in Mandaue City Cebu, Philippines, a photograph was taken of petitioner the morning after the unreasonable July 2, 2007 seizure of his person by IJM. The photograph shows petitioner in handcuffs, in front of Geronimo Rosas, PBI Commissioner, with IJM Mosier (sunglasses) and IJM Purviance on both sides of petitioner. The hearing was for Extradition to the United States for the alleged violations of the U.S. Protect Act. Nothing was stated during that hearing about summary deportation, because the June 22, 2007 mission order had expired on June 29, 2007 and petitioner was being presented on July 3, 2007. See, Appendix K.

On July 3, 2007, in Manila, Philippines, after petitioner was flown by IJM agents Mosier and Purviance at the close of the above stated extradition hearing in Mandaue City Cebu earlier that day, petitioner was photographed without handcuffs in front of Edgardo I. Mendoza, BID attorney, being freed back into the Philippines without any violations being found to have occurred. However, petitioner was explaining that even though he was free to leave, IJM agents Mosier and Purviance had stolen all of petitioner's personal effects, U.S. passport, Philippine VISA, money, cell phones and that petitioner was destitute without those items. PBI called the U.S. Embassy in petitioner's presence, and spoke to ICE agent Briola who told PBI to place petitioner into custody because the U.S. was going to extradite. See, Appendix L.

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

On July 5, 2007, IJM filed an internal follow-up report stating "[a]t approximately 1000 hours [on July 2, 2007], ALBO notified me by phone that RECZKO was in custody. According to Chief CARLO[S], he could hold RECZKO for a maximum of 8 hours. If the Bureau of Immigrations did not take custody of him by then, he would have to release him. VP Mosier and I immediately left for Dumaguete City with officer MONTOR and 2 other Bureau of Immigrations Officers. We arrvied at the Dumaguete PNP office at approximately 1615 hours. RECZKO was being held inside an upstairs office." See, Appendix M.

On August 8, 2007, IJM agent Mosier wrote a letter to BID Commissioner Marcelino C Libanan stating "the US Department of Homeland Security had requested that RECZKO be deported from the Philippines." See, Appendix N1. Also on August 8, 2007, IJM agent Mosier wrote a letter to Philippine National Police Chief Oscar Castelo Calderon stating that Police Chief Carlos was "being notified that RECZKO was a fugitive". See, Appendix N2.

On August 17, 2008, the PBI entered a summary deportation order stating that petitioner was arrested "pursuant to Mission Order No. MCL 07-008 dated 22 June 2007 is a fugitive from justice in the United States of America". The Court should take judicial notice that the Mission Order No. MCL 07-008 is Appendix I above stated that was expired on June 29, 2007, three days before petitioner was unreasonably seized on July 2, 2007. See, Appendix O.

On April 12, 2013, the U.S. Department of Justice Office of International Affairs Criminal Division stated "The Deportation Order noted that he was charged with being an undesireable alien and with being a fugitive from justice on July 6, 2007." However, petitioner had a valid VISA, and no U.S. arrest warrant or indictment was ever presented. See, Appendix P.

On August 21, 2007, Assistant U.S. Attorney Alexandra Gelber, USDOJ in Washington, DC sent an email to ICE agent Dante Orate stating" they had enough evidence of child pornography for a life sentence'. See, Appendix Q.

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Petitioner's Traverse In Opposition to Return II
DATE: 09/28/2021 09:02:25 PM

...

On September 10, 2007, ICE agent Orate emails U.S. State Department Jocelyn Tiongco that " as of this morning..We are still working on getting an arrest warrant."

On September 11, 2007, Tiongco emails ICE Agent Orate that petitioner's "valid U.S. passport and Cathy Pacific Ticket were forwarded to the Bureau of Immigrations law and investigations division. At first, the BI was hesitant to receive the travel documents because of the information they received that subject was a Federal Fugitive." I informed Commissioner Libanan and Atty. Ty that we currently do not have an existing warrant for subject's arrest."

On September 12, 2007, Tiangco emails to Orate that " I told him that DHS ICE only had in custody, was his U.S. passport which was turned over to the BID." see, Appendix R.

The Court should take note that IJM provided petitioner's passport to ICE during the July 2, 2007 arrest along with items seized from petitioner's person to include cell phones, money, wallet, Philippine Visa and other forms of identification. On this same point in fact, ICE Dante Orate "pouched" petitioner's U.S. passport on his flight from Manila, Philippines through Hong Kong to the United States. See, Appendix R.

On September 12, 2007, SA ICE, Olga Sagalovich filed the criminal complaint, which adopted all the preceding actions taken since May 10, 2007 by IJM and ICE Briola in the Philippines. On page 9, the complaint states "[o]n June 22, 2007 the Philippine Immigration Commissioner signed an order for the arrest of STANLEY DAN RECZKO, III. On July 2, 2007, STANLEY DAN RECZKO, III was apprehended by Philippine Immigration authorities in Dumaguete City, Negros Oriental, Philippines. Id. at Paragraphs 33-34.

The complaint, in the above stated portion adopting the preceding acts, says nothing about IJM and/or ICE's involvement in the July 2, 2007 arrest and says nothing about the June 22, 2007 Mission Order's content to include the expiration on June 29, 2007. COMPARE: Appendix S, page 9, Id. at Paragraph's 33-34 WITH: Appendix I (requiring "verification/validation " before arrest which was "Valid for (7) days from the date of approval [June 22, 2007]). Yet, respondent says nothing about these material omissions of fact from the complaint, says nothing about the content of the mission order and pretends as though the U.S. had nothing to do with the July 2, 2007 false arrest whatsoever.

On November 2, 2007, after petitioner was illegally extradited from the Philippines on September 12,2007, a real indictment was presented to a Grand Jury and returned with a case number, foreperson's signature and was filed on the public docket as Cr-07-01221-GHK. Compare: Appendix T (real indictment) WITH: Appendix F ( fabricated June 2007 indictment).

In 2007, IJM received several hundreds of thousands of dollars in U.S. funding for the Reczko case under "Project Lantern". This shows U.S. promotion and encouragement of IJM's actions towards petitioner abroad. See, Appendix U, United States Treasury, Internal Revenue Service, Form 990 ( petitioner has only been able to retain the single 990 form, but is aware that a whole C.D. exists with accounting of all IJM's funding from the U.S. to include activities abroad and in the petitioners case).

On January 26, 2009 at 3:45 pm, petitioner gave a 45 minute long detailed description of the July 2, 2007 false arrest in open court before former United States District Judge King, defense counselors and the respondent thereby preserving it on the record before he was pushed into self-representation for enforcing his discovery rights. Petitioner respectfully incorporates by reference the attached relevant section of the transcript proceedings, in their entirety. See Appendix V. Document 134, pages 6-13.

On August 29, 2011, at a status conference Judge King asked Bakman and Bassis why they were filing motions to dismiss as motions in limine of trial. Bakman responds "Your Honor, if I might answer that. I think there's a dispute as to the legitimacy of that motion. As lead counsel, I have been loath to bring that motion. I don't believe it has merit. Mr. Reczko wants it brought. Ms. Bassis is willing to bring that. So I'm in a quandary. I think in order to avoid a 2255 down the road, I'm going to have Ms. Bassis file that motion. She'll be signing off on it. I will not." Appendix W - August 29, 2011 Transcript of Proceedings, Page 20, Id. at 14 - 22. Bakman's foresight about avoiding the instant petition is clear evidence of his intent to subvert petitioner's Fourth Amendment rights.

④

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

On November 14, 2011, petitioner's former defense counsel, Lisa M. Bassis, filed a 'reply to government's opposition to defendant's amended motion to suppress all evidence seized by IJM and request for an evidentiary hearing', Document 328, which is also respectfully incorporated by reference, in its entirety. See Appendix X.

On September 25, 2012, a 'joint brief in support and in opposition to defendant's motion to suppress evidence seized by the international just mission', Document 441, Page 1 - 45, which is also respectfully incorporated by reference in its entirety at this time. Appendix Y (Emphasis Added In Re: Page 19, Id. 9 - 16 Extradition).

On February 2, 2015, an evidentiary hearing was held on the amended motion to suppress (after petitioner was pushed into representing himself to continue enforcing his discovery rights on September 9, 2013). Although the hearing was mishandled and completely one-sided (due to petitioner's inability to effectively represent himself), there is substantial evidence respondent knew Philippine National Police Chief Carlos would testify that the June 22, 2007 Mission Order was expired on July 2, 2007 and that absent Mission Order, no other authority existed to seize petitioner's person in the Philippines. Therefore, petitioner respectfully incorporates by reference the attached transcript of proceedings, in their entirety as well. See Appendix Z1.

For almost four years Judge King relied on Dr. Faerstein's specific clinical conclusions. Judge King adopted and stood behind Faerstein's conclusions about petitioner being able to cooperate in assisting with his defense, but not being able to proceed pro se no less than five times on the record:

On October 9, 2009, Judge King states: "Faerstein is of the view that Mr. Reczko is competent to stand trial but not competent to act as his own attorney." Document 1195, Page 5.

On October 9, 2009, Judge King states: "He's not representing himself. He cannot represent himself. He not sough to represent himself. Anyway, even if he did, he can't because the psychiatrists have made it clear that he's not competent to represent himself ... I don't really know that there's anything further that would be gained by us referring Mr. Reczko to yet another review by, let's say, Dr. Faerstein, because I'm not so sure that there would be any basis for any difference of opinion." See, Appendix Z2 Document 1206, Page 55, 58.

However, about 8 months later, after "the government consulted with Dr. Faerstein," Document 611, Page 1, and Ms. Bassis, Document 617, Page 6, Faerstein found this "difference of opinion", Appendix Z2 Document 1206, Page 58, that Judge King stated would be no basis for evaluating petitioner further. See also, Order, Document 216 ("[t]o the extent defendant wants to proceed in pro per, he must file a proper request to do so, including any showing under Edwards why is competent to represent himself, despite Dr. Faerstein's determinations to the contrary.")(emphasis added).

Dr. Hope's September 8, 2013 evaluation is in direct conflict with all of Faerstein's prior findings/conclusions. Judge King never ordered Faerstein to review Hope's bare bones report. Hope's report is a cryptic one sentence finding that petitioner was competent to represent himself at trial pro se. Hope's report only surfaced after the consultation with respondent and Bassis. This sudden, unsupported, and conclusory one sentence conclusion by Hope should have given Judge King significant pause in allowing petitioner to proceed pro se.

The decision allowing petitioner to proceed pro se cause the prejudice of petitioner's mishandling of the February 2, 2015 evidentiary hearing on the amended motion to suppress. Any time a specific conclusion is drawn for several years without wavering and that conclusion is suddenly up-ended, it should raise serious suspicion to any reasonable person. Here, appellate counsel's most prevailing argument for petitioner's direct appeal was to seek reversal of Judge King's September 9, 2013 order granting permission to proceed pro se, and vacating the proceedings thereafter based on the some 5.5 years of consistent evaluation and conclusions drawn by Faerstein, instead of the shoehorned Hope report.

## MEMORANDUM OF LAW AND ARGUMENT

"Police officers may not avoid the requirements of the Fourth Amendment by inducing, coercing, promoting, or encouraging private parties to perform searches they would not otherwise perform. See United States v. Reed, 15 F.3d 928, 932-33 (9th Cir. 1994); see also Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1301 (9th Cir. 1999)(allowing a finding of state action where a jury could find that actions were 'unlikely to have been undertaken' without state encouragement). The Supreme Court has stated it is ... axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish. Norwood v. Harrison, 413 U.S. 455, 465 (1973). A private party's search may be attributed to the state when the private party acted as an instrument or agent of the Government in conducting the search. Skinner v. Ry. Labor Execs.' Ass'n., 489 U.S. 602, 614 (1989); Reed, 15 F.3d at 931; United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981). Police officers may be liable for private party's search when the police ordered or were complicit in the search. United States v. Sparks, 265 F.3d 825, 831 (9th Cir. 2001), overruled on other grounds by United States v. Griser, 488

5

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

F.3d 844 (9th Cir. 2007)(en banc); see also, United States v. Zeigler, 474 F.3d 1184, 1188, 1190 (9th Cir. 2007)(finding state action where an FBI agent told a private employer to make a copy of its employee's computer files)." George v. Edholm, 752 F.3d 1206, 1215 (9th Cir. 2013).

Applying these authorities to the evidence attached hereto, Appendices A - Z1, shows conclusively that ICE used IJM to execute petitioner's arrest despite explicit non-compliance with the Extradition Act nor Fourth Amendment. For these reasons, the Court should find both Bakman and Bassis ineffective under the Sixth Amendment where they failed to properly litigate the seizure of petitioner's person and focused primarily on the search and evidence seized thereafter, vacate the judgment, vacate the denial of the amended motion to suppress, and enter an order granting that motion as a matter of law, or alternatively hold an evidentiary hearing at the earliest opportunity available.

   In Indiana v. Edwards, 554 U.S. 164 (2008), the Supreme Court held that a defendant who is competent to stand trial may nonetheless be incompetent to represent himself at trial. Id. at 174 - 178. The biggest concern in Edwards was a court that permits a defendant to represent himself when he lacks the competency to do so would "undercut[] the most basic of the Constitution's criminal law objectives, providing a fair trial." Id. at 176 - 177. Thus, "a trial court may insist on representation for a defendant who is competent to stand trial but who is suffering from severe mental illness to the point where he is not competent to perform the more arduous task of representing himself." United States v. Johnson, 610 F.3d 1138, 1144-1145 (9th Cir. 2010). The Ninth Circuit has "identified several considerations that bear on the Edwards inquiry." United States v. Reed, 918 F.3d 712, 721 (9th Cir. 2019). One critical factor "is the psychiatric evidence. Reports evaluating whether a defendant meets the lesser standard of competency to stand trial 'are of limited value.'" Id. (quoting United States v. Ferguson, 560 F.3d 1060, 1068 (9th Cir. 2009)). However, "reports evaluating whether the defendant can represent himself ... are more helpful." (citing United States v. Thompson, 587 F.3d 1165, 1173 (9th Cir. 2009)). "Another issue is the defendant's behavior. Behavior that is ... disruptive or defiant weighs in favor of appointing counsel." Id.



TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: Conclusion
DATE: 09/28/2021 09:02:17 PM

...

Applying these authorities to the evidence attached hereto, Appendix Z2 as well as the other documents cited above, shows without a doubt that Faerstein's unequivocal position for 5.5 years was not to be disturbed and/or supplanted by an abrupt and scant report by Hope. Appellate counsel's failure to challenge the September 9, 2013 order on these grounds, given the facts and the published precedent above cited, was objectively unreasonable. That deficient performance prejudiced petitioner by depriving him of the strongest argument available under the Fifth Amendment's due process clause with respect to the right to a fair trial and his competency to represent himself on appeal. In other words, there is a strong likelihood that petitioner's convictions would have been vacated and the judgment reversed had appellate counsel advanced the above stated argument on direct appeal. The Court should thus find counsel ineffective under the Sixth Amendment, vacate the judgment, vacate the September 9, 2013 order granting petitioner pro se status, and appoint new defense counsel at the earliest opportunity available, or alternatively hold an evidentiary hearing.

CONCLUSION

Wherefore petitioner prays that this Honorable Court grants the petition under 28 U.S.C. Section 2255 for the above stated and foregoing reasons.

Respectfully Submitted:

x _____  Date: 9/29/2021

Mr. Stanley Dan Reczko, III

*Copy of Original Mailing on 9-29-2021*



*Exhibit A*
*28 USC (2255)*



INTERNATIONAL JUSTICE MISSION

May 15, 2007

US Immigrations & Customs Enforcement
Manila, Philippines

Senior Special Agent Briola:

The International Justice Mission® (IJM) is a non-government human rights organization based in the State of Virginia, U.S.A. IJM works worldwide to support government officials and civil society actors to ensure that the most vulnerable members of society have access to the legal justice system. Our office in Cebu, Philippines handles cases involving the trafficking of children for the purpose of sexual exploitation. We would like to refer a case to you of suspected sexual abuse of a minor by a U.S. national.

The following is a summary of the victim's allegation. The suspect is Mr. Stanley "Dan" Reczko, a 42 years old white male, who has had an illicit sexual relationship with a Filipina child, now 17 years old. Their relationship started in 2003 when the child was 13 years old. Mr. Reczko pursued the minor through long distance phone calls from the United States. In 2005, Mr. Reczko came to the Philippines and proposed marriage to the child. By manipulation, they were married even with full knowledge that it is illegal to do so under Philippine law. Prior to the marriage, Mr. Reczko had sex with the child on several occasions. Further, he had this unusual behavior of taking pictures while he was having sex with her, while she was nude, and when she was in her underwear. Mr. Reczko abused the child both physically and verbally. When the child decided to leave Mr. Reczko, in the process of gathering her belongings, she collected some of the pornographic images of herself and turned them over to an IJM Investigator.

In connection with this, we respectfully request your assistance in further investigating this incident and in facilitating the arrest and prosecution of the suspect if so warranted. IJM is currently in contact with the child and she is willing to execute an affidavit against Mr. Reczko. We believe the evidence against Mr. Reczko for abusive sexual conduct against a minor is overwhelming. IJM can provide you with some of evidence necessary to build a strong case against the suspect.

The victim is currently living in a safe-house for sexually abused minors.

*( Need )*
*Affidavit*
*of*
*Alledged*
*Victim*

Sincerely,

Daryl T. Purviance, Director of Investigations
INTERNATIONAL JUSTICE MISSION®
Phone: 32.256.2866 ext 127 Fax: 32.256.2867 —— *ALL DIFFELENT*
purviance@ijm.org

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
003053

*Raida Yobenciong-Varona, M.D., F.P.O.G.S.*
Obstetrics - Gynecology

Cebu Doctors' Hospital
Osmeña Boulevard, Cebu City
☎ 253-9481

Clinic Hours:
Mon-Sat 10:00 AM - 12:00 NN
Mon-Fri 4:00PM - 6:00PM

Patient _____  Date 5/29/07

Address _____  Age ____ Sex ____

℞

To all whom it may concern,

This is to certify

that ████████████ has

Bacterial Vaginitis for

which she gave

medications.

_____ M.D.

Lic. No. _____
PTR No. _____
S2 No. _____

CO-AMOXICLAV

Augmentin 1 gram & 625 mg BID

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
003039

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX B COVER SHEET
DATE: 09/21/2021 02:03:41 PM

...

APPENDIX B

_____

B1 - Hotel Letter May 18, 2007 - Cebu Grand

B2 - Hotel Letter May 18, 2007 - Marriot

**INTERNATIONAL JUSTICE MISSION**

18 May 2007

Mr. Ronaldo Puzon
Operations Manager
Cebu Grand Hotel
N. Escario st., Cebu City

PO Box 192
CCPO, Cebu City 6000
Philippines

+63.32.256.2866
[ fax +63.32.256.2885 ]

www.ijm.org

Dear Mr. Puzon

The International Justice Mission® (IJM) is a non-government human rights organization based in Virginia, U.S.A, which works to support government officials and civil society actors throughout the world to ensure that the most vulnerable members of society have access to the legal justice system. Our office in Cebu, Philippines, handles cases involving trafficking of children for commercial sexual exploitation.

IJM is currently handling a case of a minor who was sexually abused by a certain Stanley dan Reczko, a 42-year old American national. There is evidence warranting the filing of criminal cases for trafficking, qualified seduction, physical assault and violation of the "Violence Against Women and Children Act" against Mr. dan Reczko. It is also a case covered by the U.S. Protect Act.

From our investigation, we have established that Mr. dan Reczko stayed at your hotel at various periods starting January 2005 to present. We would like, therefore, to request for records, contracts, receipts and papers pertaining to his stay. Further, we request that we be furnished a copy of his telephone records and other relevant documents. We will be using these documents and information in the case build-up.

Your favorable and prompt action shall greatly help the investigation thereby increasing the successful prosecution and conviction of Mr. dan Reczko. All records and information supplied by you shall be endorsed to the United States Department of Homeland Security and U.S. Department of Justice for evaluation and custody.

This request is confidential. Your cooperation and assistance is indeed an answer to the victim's cry for justice.

Sincerely,

Daryl Purviance
Director for Investigations

U.S. v. Reczko, CR 07-1221(A)-GHK
**SUBJECT TO PROTECTIVE ORDER**
003055

**IJM**
INTERNATIONAL
JUSTICE MISSION®

PO Box 192
GCPO, Cebu City 6000
Philippines

+63.32.256.2866
fax +63.32.256.2885

www.ijm.org

18 May 2007

Mr. Fred R. Fajardo
Director, Loss and Prevention Department
Cebu City Marriot Hotel
Cebu Business Park,
Ayala Park, Cebu City

Dear Mr. Fajardo:

The International Justice Mission® (IJM) is a non-government human rights organization based in Virginia, U.S.A, which works to support government officials and civil society actors throughout the world to ensure that the most vulnerable members of society have access to the legal justice system. Our office in Cebu, Philippines, handles cases involving trafficking of children for commercial sexual exploitation.

IJM is currently handling a case of a minor who was sexually abused by a certain Stanley dan Reczko, a 42-year old American national. There is evidence warranting the filing of criminal cases for trafficking, qualified seduction, physical assault and violation of the "Violence Against Women and Children Act" against Mr. dan Reczko. It is also a case covered by the U.S. Project Act.

From our investigation, we have established that Mr. dan Reczko stayed at your hotel at various periods starting January 2005 to present. We would like, therefore, to request for records, contracts, receipts and papers pertaining to his stay. Further, we request that we be furnished a copy of his telephone records and other relevant documents. We will be using these documents and information in the case build-up.

Your favorable and prompt action shall greatly help the investigation thereby increasing the successful prosecution and conviction of Mr. dan Reczko. All records and information supplied by you shall be endorsed to the United States Department of Homeland Security and U.S. Department of Justice for evaluation and custody.

This request is confidential. Your cooperation and assistance is indeed an answer to the victim's cry for justice.

Sincerely,

Daryl Purviance
Director for Investigations

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX C COVER SHEET
DATE: 09/21/2021 02:05:22 PM

...

APPENDIX C
———————

Preliminary Report IJM 0002 May 24, 2007

IJM RESTRICTED

**INTERNATIONAL JUSTICE MISSION**
**PRELIMINARY REPORT**

IJM RESTRICTED

| COUNTRY: Republic of the Philippines | | | Incident Number: | | 07-PHC-003 |
|---|---|---|---|---|---|
| Incident Type: | Rape of a Child in Violation of the U.S. Protect Act, 2003 | | Code: | | |
| Incident Date: | December 6, 2005 to May 10, 2007 | | Incident Time: | | |
| Incident Location: | Suba, Pasil, Cebu City, Cebu Philippines | | Grid: | | See Narrative |
| COMPLAINANT | SUCIO, Annie | | | | |
| Address: | Department of Social and Welfare Services (DSWS) | | Ethnicity: | | Filipino |
| | Barangay Labangon, Cebu City, Cebu Philippines | Tel: +63.32.262.5163 | | DOB/Age: | 10/31/1966 |
| VICTIM 1 | ▓▓▓▓▓▓▓▓ | | | | |
| Address: | Block #3 Missionary Street, Suba, Pasil | | Ethnicity: | | Filipino |
| | ▓▓▓▓▓▓ | Tel: ▓▓ | | DOB/Age: | ▓ |
| Injuries: | See Narrative | | | | |
| VICTIM 2 | N/A | | | | |
| Address: | | | Ethnicity: | | |
| | | Tel: | | DOB/Age: | |
| Injuries: | | | | | |
| SUSPECT 1 | RECZKO, Stanley "Dan" | | | | |
| Address: | Mike & Tess Apartelle, Door #1, Salvador Extension | | Ethnicity: | | Caucasian |
| | Labangon, Cebu City, Cebu Philippines 6000 | Tel: +63.916.949.5838 | | DOB/Age: | 10/20/1964 |
| Sex: | Male | Race: | White | Facial Hair: | Mustache |
| Hair Color: | Light Brown | Height: | 6'01" | Glasses: | None seen |
| Clothing: | | Weight: | 225 lbs. | Build: | Medium-Heavy |
| Description: | Tattoos – Chinese letters on chest, | | | | |
| SUSPECT 2 | N/A | | | | |
| Address: | | | Ethnicity: | | |
| | | Tel: | | DOB/Age: | |
| Sex: | | Race: | | Facial Hair: | |
| Hair Color: | | Height: | | Glasses: | |
| Clothing: | | Weight: | | Build: | |
| Description: | | | | | |
| WITNESS 1 | ▓▓▓▓▓▓ | | | | |
| Address: | ▓▓▓▓▓▓▓▓ | | Ethnicity: | | Filipino |
| | | Tel: ▓ | | DOB/Age: | ▓ |
| WITNESS 2 | ▓▓▓▓▓▓ | | | | |
| Address: | ▓▓▓▓▓▓▓▓ | | Ethnicity: | | Filipino |
| | | Tel: ▓ | | DOB/Age: | ▓ |
| WITNESS 3 | ▓▓▓▓▓▓ | | | | |
| Address: | ▓▓▓▓▓▓▓▓ | | Ethnicity: | | Filipino |
| | | Tel: ▓ | | DOB/Age: | ▓ |
| IJM Employee: | L. BALDADO, Investigator | Signature: | *Inbaldado* | Date: | 05/24/2007 |
| Approved: | D. PURVIANCE, DOI | Signature: | | Date: | |

IJM Cebu QFP
Preliminary Report – Page 1 of 12

IJM RESTRICTED

IJM0002

Defendant's Motion to Suppress DER 1

IJM Protected

13

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX D COVER SHEET
DATE: 09/21/2021 02:06:53 PM

...

APPENDIX D

_____

Perpetrator Accountability January 10, 2008

International Justice Mission - Local, International Law Enfo...        http://www.ijm.org/index2.php?option=com_content&tas...

# LOCAL, INTERNATIONAL LAW ENFORCEMENT COOPERATION BUILDS PERPETRATOR ACCOUNTABILITY IN SOUTHEAST ASIA

[PRINT]

Thursday, 10 January 2008

An IJM investigation in conjunction with local police has prompted the arrest of an American for his abuse of a minor in the Philippines. The 43-year-old man, a convicted sex offender in the U.S., is accused of sexually abusing a Filipina adolescent over a three-year period, beginning when the victim was 14.

IJM investigative staff in the Philippines received a tip that an American expatriate had habitually sexually abused a young teen for over three years and had gone so far as to illegally "marry" the victim when she was 15 in an attempt to legitimate his abuse. After preparing an initial investigation report, IJM worked closely with Philippine and U.S. authorities to locate the perpetrator under the auspices of the PROTECT Act, the U.S. law that makes sexual offenses committed against minors abroad by American citizens punishable in U.S. courts. Presented with documentation of the suspect's sexual abuse of a minor, the Philippines Bureau of Immigration issued an order for his arrest in June.

However, the suspect was tipped off that police were looking for him and subsequently fled to an island several hours away. Despite his attempts at evasion, IJM investigators were able to track him down and resume surveillance. With confirmation that he was still at large, the Bureau of Immigration worked in collaboration with local police to arrest him.

After his arrest, the suspect and investigators traveled nearly five hours to return to the immigration office police station, where he was booked into immigration custody pending deportation.

In September, the suspect was deported to the U.S., where he was arrested upon arrival and charged under the PROTECT Act.

"These cases are critically important to demonstrate to pedophiles that there are no 'safe harbors' left in the world for the sexual exploitation of children," explains IJM Southeast Asia Director Kaign Christy.

The victim has been placed in a safe aftercare home, where she is doing well. She is taking tutorial classes to prepare for her upcoming educational exams and will enroll in computer training courses.

Close Window

4/18/11 9:14 PM

International Justice Mission

Notes To Financial Statements

## Note 1.    Nature Of Activities And Significant Accounting Policies

Nature of activities: International Justice Mission (the Organization) is a not-for-profit organization founded on May 19, 1994, in the state of Virginia. The Organization is a Christian agency that seeks to advance the Scriptural mandate to help people who are suffering injustice and oppression. The primary activities of the Organization are to document human rights abuses abroad, to educate the Christian church and the general public about such abuses and the need for the church to respond and to mobilize intervention on behalf of the victims of these abuses.

A summary of the Organization's significant accounting policies follows:

Basis of accounting: The accompanying financial statements are presented in accordance with the accrual basis of accounting, whereby support and revenue is recognized when earned and expenses are recognized when incurred.

Basis of presentation: The financial statement presentation follows the recommendations of the Financial Accounting Standards Board in its Statement of Financial Accounting Standards (SFAS) No. 117, *Financial Statements of Not-for-Profit Organizations*. Under SFAS No. 117, the Organization is required to report information regarding its financial position and activities according to three classes of net assets: unrestricted net assets, temporarily restricted net assets, and permanently restricted net assets. The Organization has no permanently restricted net assets at December 31, 2007.

Cash and cash equivalents: For purposes of reporting cash flows, the Organization considers all investments purchased with a maturity of three months or less to be cash equivalents. All cash and investments, regardless of maturity, held by an investment advisor, are considered investments.

Due to the nature of the Organization, the Organization uses investments with a maturity of less than three months. The Organization has operations in many countries and many transactions have been performed using cash. In addition, the field offices receive cash in advance for their operations.

Financial risk: The Organization maintains its cash in bank deposit accounts, which, at times, may exceed federally insured limits. The Organization has not experienced any losses in such accounts. The Organization believes it is not exposed to any significant financial risk on cash.

The Organization invests in a professionally managed portfolio that contains equity securities, money market funds, and certificates of deposit. Such investments are exposed to various risks such as market and credit. Due to the level of risk associated with such investments, and the level of uncertainty related to changes in the value of such investments, it is at least reasonably possible that changes in risks in the near term could materially affect investment balances and the amounts reported in the financial statements.

Restricted cash: Cash and cash equivalents at December 31, 2007, includes certificates of deposit in the amount of $275,348, which are restricted as security under two letters of credit with a local bank.

Investments: Investments consist of certificates of deposit, equity securities, and money market funds and are reflected at fair market value. To adjust the carrying value of these investments, the change in fair market value is included as a component of investment income on the statement of activities.

Receivables: Receivables are carried at original invoice amount less an estimate made for doubtful receivables based on a review of all outstanding amounts on a monthly basis. Management determines the allowance for doubtful accounts by regularly evaluating individual customer receivables and considering a customer's financial condition, credit history, and current economic conditions. Receivables are written off when deemed uncollectible. Recoveries of receivables previously written off are recorded when received. There is no provision for doubtful accounts at December 31, 2007.

Defendant's Motion to Suppress DER 185

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX E COVER SHEET
DATE: 09/21/2021 02:08:47 PM

...

APPENDIX E
_____

Project Lantern - ICE Agent Briola Notified - May 24, 2007

/ 6

IJM RESTRICTED            Incident Number: 07-PHC-003

| Project Lantern Data | | |
|---|---|---|
| What was the total number of persons *not* affiliated with a commercial sex establishment but were offering minor sex-trafficking victims? | | 0 |
| In how many instances did the facilitator, victim, or commercial sex worker cite law enforcement as a reason minors were not available? | | 0 |
| How many sex-trafficking perpetrators were identified? | | 1 |
| How many sex-trafficking arrests were made? | | 0 |

| Establishment | Type | Number of minor victims | Number of adult victims | Total number of sex-workers | Sex-act Offered | Price |
|---|---|---|---|---|---|---|
| N/A | | 1 | | | | N/A |

| Establishment | Security (list all security measures in place for each establishment) |
|---|---|
| N/A | |

| Authorities Notified: | | Agencies Notified: | | | |
|---|---|---|---|---|---|
| Name of Official: | Special Agent Julian S. Briola | UNICEF | ICRC | ILO | |
| Rank of Official: | Senior Special Agent | UNESCO | WHO | WTO | |
| Date & Time Notified: | 05/11/2007 1400 hours | OECD | Other: | X U.S. ICE | |
| Name of Local Station: | U.S. Embassy, Manila | Chief of Police: | | | |
| Organization: | U.S. Immigration and Customs Enforcement | National | Local | Other | X |

*U.S.*
*REFERRAL*

**IJM Action Taken:**

1. Investigations Team accepted the case referral.
2. Aftercare and Investigations Teams interviewed Victim ▮▮▮▮▮▮▮▮
3. Aftercare and Investigations Teams re-located Victim ▮▮▮▮▮▮▮▮ to a safe house
4. Investigations Team conducted a criminal investigation
5. Legal Team drafted case correspondence and provided legal consultation to the Investigations Team
6. Investigations Team notified, gained the support of, and mobilized the U.S. Immigrations and Customs Enforcement (ICE), Manila, to act on behalf of Victim ▮▮▮▮▮▮▮▮
7. Investigations Team turned all evidence items over the custody of U.S. ICE, Manila.

| Follow up Required? | Yes | Non-compliance issues: (Please describe) |
|---|---|---|
| Assigned To: | L. BALDADO | |
| Date: | 05/10/2007 | |
| Other Reports Attached: | | |

| Case Status: | Open | X | Inactive | | Closed | |
|---|---|---|---|---|---|---|

| IJM Employee: | L. BALDADO, Investigator | Signature: | *Lbaldado* | Date: | 05/24/2007 |
|---|---|---|---|---|---|
| Approved: | D. PURVIANCE, DOI | Signature: | | Date: | |

IJM Cebu OFP
Preliminary Report - Page 2 of 12        IJM RESTRICTED

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX F COVER SHEET
DATE: 09/21/2021 02:11:33 PM

...

APPENDIX F
_____

June 1, 2007 Unsigned/Unfiled/Unauthenticated/Fabricated Indictment

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9      FOR THE CENTRAL DISTRICT OF CALIFORNIA
10            June 2007 Grand Jury

| | |
|---|---|
| 11 UNITED STATES OF AMERICA, ) | CR No. 07-_____ |
| 12              Plaintiff, ) | I N D I C T M E N T |
| 13                  v.   ) | [18 U.S.C. § 2423(b): Travel with Intent to Engage in |
| 14 STANLEY DAN RECZKO, III, ) | Illicit Sexual Conduct; 18 U.S.C. § 2423(c): Engaging |
| 15             Defendant. ) | in Illicit Sexual Conduct in Foreign Places; 18 U.S.C. |
| 16 ) | § 2260A: Penalties for Registered Sex Offenders] |
| 17 ) | |

18
19      The Grand Jury charges:
20                    COUNT ONE
21          [18 U.S.C. §§ 2423(b), 2260A]
22      On or about November 20, 2005, in Los Angeles County, within
23  the Central District of California, and elsewhere, defendant
24  STANLEY DAN RECZKO, III, a United States citizen and a person
25  registered as a sex offender, knowingly traveled in foreign
26  commerce, namely from Los Angeles, California, to the
27  Philippines, for the purpose of engaging in illicit sexual
28  conduct, as defined in Title 18, United States Code,
    Section 2423(f), with a person under 18 years of age.

JJL:jjl

19

COUNT TWO

[18 U.S.C. §§ 2423(b), 2260A]

On or about January 20, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

2

2o

COUNT THREE

[18 U.S.C. §§ 2423(b), 2260A]

On or about November 9, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

COUNT FOUR

[18 U.S.C. §§ 2423(b), 2260A]

On or about March 14, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

4

22

COUNT FIVE

[18 U.S.C. §§ 2423(c), 2260A]

Between on or about November 22, 2005, and on or about April 27, 2007, defendant STANLEY DAN RECZKO, III, a citizen of the United States residing in Los Angeles, California, within the Central District of California, and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California to the Philippines, and engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

A TRUE BILL

_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney


CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent and Organized Crime Section

DANIEL A. SAUNDERS
Assistant United States Attorney
Deputy Chief, Violent and Organized Crime Section

JOHN J. LULEJIAN
Assistant United States Attorney
Violent and Organized Crime Section

23

# ERRATA SHEET

Pursuant to the Federal Rules of Procedure and the California Code of Civil Procedure, any changes in form or substance you wish to make to your deposition testimony shall be included in the deposition transcript. Should you have any corrections, please enter them below.

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

PAGE _____ LINE _____

CHANGE: _____

REASON: _____

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX G COVER SHEET
DATE: 09/21/2021 02:14:08 PM

...

## APPENDIX G

_____

U.S. ICE Letter Written By Agent Briola For Theodore Lopez June 12, 2007

2 4



U.S. Depaent of Homeland Security
ICE Attaché, U.S. Embassy - Manila
1201 Roxas Blvd., Ermita
Manila 1000, Philippines

**U.S. Immigration
and Customs
Enforcement**

June 12, 2007

Hon. Marcelino Libanan, Commissioner
Bureau of Immigration
Magallanes Drive, Intramuros
Manila 1002, Philippines

<u>RE: Stanley RECZKO, American, U.S. Passport # 104888706, Report of Rape of Child</u>

Dear Sir:

The U.S. Department of Homeland Security, Immigration and Customs Enforcement
(DHS/ICE) of the U.S. Embassy in Manila is authorized to conduct investigations on American
citizens and lawful residents of the United States who violate the Child Protect Act. The Act
was put into law in 2003 and was aimed at assisting law enforcement in the investigation and
arrest of child predators, pedophiles, human traffickers of minors for prostitution and sex
tourism. This law can also lead to the U.S. prosecution of Americans and U.S. lawful
residents who violate the law in a foreign country.

On May 23, 2007, our office received information from a credible source indicating that an
American, Stanley RECZKO, entered the Philippines sometime in March 2007 and became
involved in a sexual, physical and verbally abusive relationship with a 17 year-old Philippine
female alleged to be his wife. It is our understanding that under Philippine law a minor cannot
legally marry in the Philippines. It is presumed that RECZKO has been having sex with the
Filipina for over 2 years, since the age of 15. <u>Subsequent investigation by our office</u> reveals
RECZKO is not married to the Filipino girl and that the marital ceremony performed was faked
by RECZKO in order to fool the parents and the girl. Additional information received
indicated that RECZKO has a previous U.S. conviction for Rape of a Child (14 year-old).
Details are enclosed under separate cover. Current information indicates that RECZKO has
been harassing the girl's family after she was placed in a "safe-house".

ICE Attaché Manila is providing this information to your office to act upon accordingly and as
you deem appropinte. Attached is a copy of the arrest and conviction details of Stanley
RECZKO.

Although the above information is unclassified, it is strictly law enforcement sensitive. The
point of contact will be Immigration and Customs Enforcement, Sr. Special Agent Julian
Briola, who can be reached at, cell no. 0917-830-2336.

www.ice.gov

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005683

25

SUBJECT: Stanley RECZKO, . .nerican, Child Rape
Page 2

Respectfully,

Theodore C. Lopez
Deputy ICE Attaché

Cc: Atty. Gary Mendoza, BID
Atty. Roy Almoro, Associate Commissioner

Enclosures: Bio data sheet of Stanley RECZKO

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005684

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX H COVER SHEET
DATE: 09/21/2021 02:16:29 PM

...

## APPENDIX H

---------

Fax From Attorney Edgardo Mendoza To ICE Agent Briola June 20, 2007

FROM : ATTY ELGARDO PENDUZA-RI                    FAX NU. : 3384459                    Jun  20 2007 03:58PM P1



REPUBLIC OF THE PHILIPPINES
DEPARTMENT OF JUSTICE
**BUREAU OF IMMIGRATION**
MAGALLANES DRIVE, INTRAMUROS
1000 MANILA

## MEMORANDUM

FOR      :      **ATTY. FAIZAL HUSSIN**
Chief, Intelligence Division

FROM    :      **THE CHIEF**
Immigration Regulation Division

DATE    :      **20 June 2007**

x - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Respectfully forwarding for your appropriate action the herein letter of Theodore C. Lopez, Deputy Immigration and Customs Enforcement Attache, US Department of Homeland Security, regarding the case Mr. Stanley Reczko, American national, who is involved in a sexual, physical and verbally abusive relationship with a 17 year-old Philippine female alleged to be his wife.

**ATTY. EDGARDO L. MENDOZA**

DEAR JULIAN
THE COPY FOR
THE COMMISIONER
WAS SENT TO HIS
FFICE JUNE 12,
2007.

SRL

STANLEY DARL RECZKO

Dear Julian,

The copy f the Comm was sent to his Office June 12, 2007.

hko
ELM/mm

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
007016

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX I COVER SHEET
DATE: 09/21/2021 02:21:28 PM

...

APPENDIX I
_____

Mission Order Used To Effectuate Arrest June 22, 2007;

Identifies Reczko As Fugitive From Justice;

Was valid from June 22, 2007-June 29, 2007;

Required Strict Compliance, And A Report & Recommendation;

(Actual Arrest Took Place On July 2, 2007)

29



Republic of the Philippines
Department of Justice
BUREAU OF IMMIGRATION
1002 Manila

MISSION ORDER NO. MCL-07-_008_

TO          ATTY. FAIZAL U. HUSSIN
            Chief, Intelligence Division
            And Any Available Agent

SUBJECT     STANLEY RECZKO
            U.S. national

AREA        Cebu City
            OR WHEREVER FOUND

DATE        Valid upon date of Approval ( 22 June 2007 ) fe

1. Conduct verification/validation on the admission status and activities of said foreign national and effect the immediate arrest if found to have violated the Philippine Immigration Act of 1940, as amended.

2. Valid for seven (7) days from date of approval.

3. Submit after Mission report and recommendation.

4. For strict compliance.

MARCELINO C. LIBANAN
Commissioner

CERTIFIED TRUE COPY
BI - INTELLIGENCE
CERTIFIED BY

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
007017

30

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-------------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX J COVER SHEET
DATE: 09/21/2021 02:24:06 PM

...

APPENDIX J

_____

Philippine Bureau of Immigration Memorandum Under 1940 Immigration Act December 15, 2008

Republic of the Philippines
DEPARTMENT OF JUSTICE
**BUREAU OF IMMIGRATION**
Magallanes Drive, Intramuros
1002 Manila

07 December 2006

### MEMORANDUM ORDER No. AFF-2006- 031

*Further Amendment to the Additional Rules to Supplement
Disposition of Deportation Cases under Memorandum
Order No. ADD-01-035 dated 22 August 2001*

In compliance with the Memorandum from the Secretary of the Department of Justice dated 24 November 2006 requiring the Bureau of Immigration (BI) to immediately undertake the necessary changes in its rules of procedure concerning summary deportation to ensure that the law is complied with and the procedure is regular and above board, amended Rule VII-a of the Revised Rules for Deportation Proceedings under Memorandum Order No. ADD-01-035 dated 22 August 2001, is further amended as follows:

"**Rule VII-a.** *Summary deportation. Duty of special prosecutor. Duty of the Intelligence Division. Duty of Board of Special Inquiry.* — Summary deportation shall apply where the alien is overstaying, undocumented, improperly documented, a fugitive from justice or is in violation of the terms and conditions of his release on bond or recognizance. In any of these instances, the Special Prosecutor shall immediately prepare charges which shall be subscribed before the Executive Director.

The Special Prosecutor shall then transmit a certified true copy of the charge sheet to the BI-Intelligence Division, which shall be tasked to procure the necessary clearances for deportation from the National Bureau of Investigation (NBI), Philippine National Police (PNP) and regular courts and/or other clearances/documents relative to the deportation case.

The Intelligence Division, which shall be authorized to receive and certify that said clearances for deportation are genuine and authentic from the original copies received from the requested agencies, shall submit and officially transmit in writing the original and certified true copies of said clearances to the Board of Special Inquiry/Special Task Force for consolidation in the deportation records.

Said clearances, *inter alia*, shall be considered by the Board of Commissioners in determining whether there is factual basis for the issuance or non-issuance of a summary deportation order. The order shall clearly and distinctly state the facts and the law on which it is based.

However, if there is a material lapse of time from the issuance of clearances for deportation and the respondent's *actual* deportation and there is reasonable ground to believe that the latter maybe facing case(s) that arose after the issuance of the previous clearances, new clearances for deportation shall be required by the Special Prosecutor".

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005780




*Embassy of the United States of America*

*Manila, Philippines*

Republic of the Philippines )
City of Manila )
Embassy of the United States )
    of America    )  ss:

    I certify that the attached document is a true and faithful copy of the original, and that it has been carefully examined by me, compared with the said original, and found to agree with it word for word and figure for figure.

Lisa A. Mooty
Vice Consul of the
United States of America
Indefinite Commission

<u>January 13, 2009</u>
Date

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005779

33

Page 2
Memo Order No. AFF-2006-_____
Amendment to Additional Rules to Supplement
Disposition of Deportation Cases

All rules and regulations or parts thereof inconsistent with this Memorandum Order are hereby repealed or amended accordingly.

Copies of Memorandum Order No. ADD-01-004 dated 07 June 2001, Memorandum Order No. ADD-01-031 dated 06 August 2001 and Memorandum Order No. ADD-01-035 dated 22 August 2001 are hereto attached as Annexes "A", "B" and "C", respectively, for reference purposes.

This amendment shall take effect immediately.

ALIPIO F. FERNANDEZ, JR.
Commissioner

Copy furnished:

1. Secretary, Department of Justice;
2. Board of Commissioners, this Bureau;
3. Office of the Executive Director, this Bureau;
4. Law and Investigation Division, this Bureau;
5. Intelligence Division, this Bureau;
6. Board of Special Inquiry, this Bureau;
7. Civil Security Unit, this Bureau;
8. Administrative Division, this Bureau;
9. Special Task Force, this Bureau;
10. U.P. Law Center, Diliman, Quezon City.

LAW & INVESTIGATION DIVISION
CERTIFIED TRUE COPY

By: _____
Date: DEC 1 5 2008

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005781

Republic of the Philippines
Department of Justice
BUREAU OF IMMIGRATION
Manila



BUREAU OF IMMIGRATION
RECEIVED
AUG 2 2 2001
Adie 6.40 thm
PERSONNEL SECTION

August 22, 2001

MEMORANDUM ORDER No. ADD-01-_035_

Amendment to Additional Rules to Supplement Disposition of Deportation Cases

Memorandum Order No. ADD-01-031, Rule VII.a, dated 6 August 2001 is hereby amended as follows.

"Rule VII-a. *Summary deportation. Duty of special prosecutor. Duty of Board of Special Inquiry.* — Summary deportation shall apply where the alien is overstaying, undocumented, improperly documented, a fugitive from justice or is in violation of the terms and conditions of this release on bond or recognizance In any of these instances, the Special Prosecutor shall, within a period of 24 hours upon receipt of the records, prepare written memorandum that recommends summary proceedings. Upon receipt of such memorandum, the Board of Special Inquiry shall immediately prepare the Summary Deportation Order for the Board of Commissioners."

This amendment shall take effect immediately.

ANDREA D. DOMINGO
Commissioner

Cc: All concerned
U.P. Law Center

LAW & INVESTIGATION DIVISION
CERTIFIED TRUE COPY

By:
Date: DEC 1 2008

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
005782

35

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

----------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX K COVER SHEET
DATE: 09/21/2021 02:29:04 PM

...

APPENDIX K

_____

Photograph of Reczko, IJM Agent Mosier, IJM Agent Purviance, and Rosas BI Commissioner

On July 3, 2007 Morning After Unreasonable Seizure on July 2, 2007

(SEE RECZKO IN HANDCUFFS)

36

IJM_MDC_PROD_1740



TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

----------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX L COVER SHEET
DATE: 09/21/2021 02:35:02 PM

...

## APPENDIX L

Photograph of Attorney Edgardo Mendoza, Chief Philippine Bureau of Immigration Attorney,

Various Philippine Immigration Officers, And Reczko On July 3, 2007 In Manila, Philippines

Mendoza Has Telephone COnversation With ICE Agent Briola About IJM Agents Purviance and Mosier

Taking Reczko's Passport, Money, And Personal Effects On July 2, 2007

(SEE RECZKO WITHOUT HANDCUFFS)

IJM_MDC_PROD_1741

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX M COVER SHEET
DATE: 09/21/2021 02:36:32 PM

...

APPENDIX M

———————

Follow-up Report IJM - July 5, 2007

40

IJM RESTRICTED          INTERNATIONAL JUSTICE MISSION          IJM RESTRICTED
                              FOLLOW-UP REPORT

Republic of the Philippines, Cebu OFP                    Report Number: 07-PHC-003

| Project Lantern Data | | | | | | |
|---|---|---|---|---|---|---|
| What was the total number of persons *not* affiliated with a commercial sex establishment but were offering minor sex-trafficking victims? | | | | | | |
| In how many instances did the facilitator, victim, or commercial sex worker cite law enforcement as a reason minors were not available? | | | | | | |
| How many sex-trafficking perpetrators were identified? | | | | | | |
| How many sex-trafficking arrests were made? | | | | | | |

| Establishment | Type | Number of minor victims | Number of adult victims | Total number of sex workers | Sex acts Offered | Price |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

| Establishment | Security (list all security measures in place for each establishment) |
|---|---|
| | |

**Narrative:**

On Sunday July 01, 2007, IJM Investigator Mark ALBO notified me of a possible lead on the whereabouts of Suspect Stanley D. RECZKO. It was suspected that RECZKO was now staying in a hotel in Dumaguete City, Negros. I asked Investigator ALBO and IJM Investigator Lisa BALDADO to go to there and confirm the report if possible.

By late Sunday evening, ALBO and BALDADO notified me that they had located RECZKO. They continued their surveillance at the hotel.

On Monday, July 02, 2007 at approximately 0730, I notified Bureau of Immigrations Intelligence Officer Dino S. MONTOR by phone that we had located RECZKO. I provided him with very little information and asked him to meet me at the IJM Cebu office. He arrived at 0830 hours and I explained what we had learned.

Investigative Assistant Ana BUNGCARAS called PSupt Dionardo CARLO, PNP Chief of Dumaguete City. I asked Officer MONTOR to speak with him while we faxed the Bureau of Immigration mission order to the Chief authorizing RECZKO's arrest. MONTOR agreed and we immediately faxed the order to Chief CARLO.

At approximately 1000 hours, ALBO notified me by phone that RECZKO was in custody.

According to Chief CARLO, he could hold RECZKO for a maximum of 8 hours. If the Bureau of Immigrations did not take custody of him by then, he would have to release him.

VP MOSIER and I immediately left for Dumaguete City with Officer MONTOR and 2 other Bureau of Immigrations Officers. We arrived at the Dumaguete PNP office at approximately 1615 hours. RECZKO was being held inside an upstairs office.

As RECZKO was being transferred to the custody of Immigrations, I inquired about his mobile phone. PNP PO3 Liberato D. FAELOGO (DOB 03-15-66) handed me RECZKO's phone and what appeared to be a shredded plastic

| IJM Employee: | Daryl T. PURVIANCE, DOI | Signature: | | Date: | 07-05-2007 |
|---|---|---|---|---|---|
| Approved: | Daryl T. PURVIANCE, DOI | Signature: | | Date: | 07-05-2007 |

IJM Cebu OFP
Follow-Up Report—Page 1 of 2          **IJM RESTRICTED**

IJM Protected                                                           IJM0715

U.S. v. Reczko, CR 07-1221(A)-GHK
SUBJECT TO PROTECTIVE ORDER
011762

*41*

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX N COVER SHEET
DATE: 09/21/2021 02:39:52 PM

...

APPENDIX N
_____

N1 - Letters by Mosier To Libanan, Philippine Commissioner - August 8, 2007

N2 - Letters by Mosier To Calderon, Philippine National Police Chief - August 8, 2007



**International Justice Mission**

Commissioner Marcelino C. Libanan,
Bureau of Immigration and Deportation
4th Floor BF Condominium
Soriano St., Cor. Solana St.
Intramuros, Manila
Philippines

08 August 2007

Dear Commissioner Libanan,

I am writing this letter in support of immigration officers assigned to the Central Visayas
Region in connection with the arrest of a US national named Stanley D. REZCKO.

REZCKO has been identified by the State of New York in the United States as a sexually
violent offender and, as you know, the US Department of Homeland Security had requested
that REZCKO be deported from the Philippines based on information received from IJM
that he was involved with the child sexual exploitation of a Filipina.

An order issued by your office authorizing the arrest and detention of REZCKO was
forwarded to the Bureau of Immigration office in Mandaue City. The agents and intelligence
officers assigned immediately began attempts to locate the subject, but to no avail. The BI
contacted IJM and a collaborative investigation ensued to locate the subject.

IJM worked closely with Mr. Ramon Ugarte, Mr. Mabert Impas, Jr., and Mr. Dilausan Montor,
requiring many hours of mobile and fixed surveillance that were necessary, but initially
unfruitful. The investigation took a positive turn and the location of the subject was verified.
These officials contacted their relevant law enforcement counterparts in Dumagete City on
the island of Negros, resulting in the arrest of REZCKO without major incident.

We greatly appreciated the dedication of these officials and their willingness to follow through
on any investigative lead and exhaust the many potential avenues of investigation.

The Bureau of Immigration officials who participated in this investigation and apprehension
are to be commended for their commitment to professionalism in this case.

Sincerely,

Robert P. Mosier
Director of Investigations

*[handwritten in left margin: WHERE IS THE ORDER?]*

Post Office Box 58147 Washington, D.C. 20037 U.S.A. Telephone 703-465-5495 Facsimile 703-465-5499

IJM Protected

IJM0103

*[handwritten at bottom: 43]*



**International Justice Mission**

Oscar Castelo Calderon
Police Director General, The Chief, Philippine National Police
Office of the Chief, Philippine National Police
Camp Crame, Quezon City
Philippines

08 August 2007

Dear Director General Calderon,

I should first congratulate you on your promotion to Director General of the Philippine National Police.

I apologize in advance for the length of this letter, but wanted to take this opportunity to write to you about the excellent work some of your officers are doing in the field.

Our staff in the Central Visayas region recently worked with members of the Philippine National Police in the apprehension of a U.S. national named Stanley D. RECZKO. After having been classified as a sexually violent offender by the State of New York in the United States, RECZKO had relocated to the Philippines and became involved in the child sexual exploitation of a Filipina. When learned, this information was passed on to the relevant Philippine authorities, who responded quickly and arrested RECZKO without major incident. I credit the suspect's successful apprehension to the professionalism and leadership of your commanding officers in the Central Visayas region.

I would first like to recognize the efforts of Police Superintendent Dionardo B. Carlos who is the Police Chief for the Dumaguete Police Station for the Negros Oriental Provincial Police Office. RECZKO initially fled to Negros in hopes of evading authorities, but the buck stopped there due to Police Superintendent Carlos's good work. Upon being notified that RECZKO was a fugitive, Police Superintendent Carlos immediately took proactive measures to secure the perimeter of the hotel where the suspect was staying with a woman and a young child. Police Superintendent Carlos initiated a fixed surveillance with an arrest team in the event the suspect exited the hotel. The suspect, being aware that he was wanted, was very careful not expose himself to law enforcement. After some 18 hours the suspect exited the hotel alone and was confronted and initially invited to the Dumaguete Police Station. The suspect then fled on foot and, after a brief foot chase, physically assaulted an officer. The remaining officers demonstrated a show of force, using only the amount of force necessary to overcome the resistance, and took RECZKO into custody without injury or further incident.

IJM Protected

IJM0104

44

The tactics employed during the operation, particularly the use of restraint, demonstrated the training initiatives undertaken by the Philippine National Police and the effectiveness of Police Superintendent Renato R. Dugan, Chief, Human Resource Development Section, Regional Personnel and Human Resource Development Division for Region VII. This Police Superintendent's work on PNP officer training initiatives clearly prepared these officers to respond quickly and to effectively handle a potentially dangerous situation with professional tactics.

I would also like to commend the former Director of Police for Region VII, Chief Superintendent Silverio Dionio Alarcio Jr., CS EE for his success in supporting these officers who exhibited a high level of dedication to justice. In each instance throughout this investigation, when members of IJM made contact with the Philippine National Police in Cebu and Negros, the officers with whom we interacted responded with dedication and commitment to take the appropriate action. I believe this kind of effective response is due in great part to positive, empowering leadership. For that, I would like to thank Chief Superintendent Silverio Dionio Alarcio Jr.

In these times of uncertainty and terror, we are grateful to have had the opportunity to work with officers who demonstrate such a genuine commitment to the safety and security of citizens. It is because of the excellent leadership and training of Police Superintendent Dionardo B. Carlos and his officers in the Central Visayas region that this sexually violent offender RECZKO has been removed from the streets of Dumaguete thereby making it a safer place for all.

In closing, I would like to mention that I sometimes travel to the Philippines and look forward to the opportunity to meet with you personally.

With Best Regards,

Mosier
Director of Investigations

IJM Protected

IJM0105

45

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-----------------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX O COVER SHEET
DATE: 09/21/2021 02:41:41 PM

...

APPENDIX O
_____

Philippine Bureau of Immigration Summary Deportation Order August 17, 2007

REPUBLIC OF THE PHILIPPINES
DEPARTMENT OF JUSTICE

# BUREAU OF IMMIGRATION
MAGALLANES DRIVE, INTRAMUROS
1002 MANILA



AMERICAN EMBASSY
MANILA
RECEIVED
AUG 17 2007
SPECIAL CONSULAR SERVICES

In re:
Deportation Case Against

**STANLEY DAN RECZKO III,**
*D.O.B. 20 October 1964,*
*American national,*
           *Respondent.*
x------------------------------------------------x

S.D.O. No. MCL-07- __C32__
**(Summary Deportation Order)**
DC No. MCL-07-07/04-036
B.L.O. No. MCL-07- __303__

L.O.W.L.O. No. MCL-07-__165__
(Lifting from Watchlist)

## SUMMARY DEPORTATION ORDER

Records show that on 06 July 2007, Respondent was charged for being an undesirable alien and for being a fugitive from justice, in violation of Section 37(a)(7) of the Philippine Immigration Act of 1940, as amended, committed as follows:

> *"That on 03 July 2007, respondent, who was arrested by the Bureau's Cebu operatives pursuant to Mission Order No. MCL 07-008 dated 22 June 2007 is a fugitive from justice in the United States of America and a convicted felon for the crime of "Rape-1st degree and Forcible abduction (victim is a 14 yr. Old girl)" by the County Court of Jefferson, Watertown, New York. Respondent is a registered violent sex offender and is living with a Filipina (minor) with whom he has a fake marriage "*

Pursuant to the Memorandum Order No. AFF-2006-021, certified copies of clearances from the National Bureau of Investigation, Regional Trial Court, Cebu City, Cebu City Police Station, respondent having been apprehended within the said jurisdiction have already been secured by the Bureau's Intelligence Division.

WHEREFORE, pursuant to Memorandum Order No. ADD-01-035, respondent being an undesirable alien and considering further that respondent is a fugitive from justice, it is hereby ordered that respondent be deported to his country of origin.

Further, in order to ensure the implementation of this Summary Deportation Order (SDO) against respondent **STANLEY DAN RECZKO III,** order is hereby given for the provisional lifting of respondent's name in the Bureau's Watchlist under reference No. MCL-07-120 dated 10 July 2007, solely for the purpose of implementing this SDO.

Let respondent's name be included in the Blacklist immediately upon implementation of this Order.





REPUBLIC OF THE PHILIPPINES
DEPARTMENT OF JUSTICE

# BUREAU OF IMMIGRATION

MAGALLANES DRIVE INTRAMUROS
1002 MANILA

*Page 2*
*SDO*
*STANLEY DAN RFCZKO III*

Give copies of this Order to the following:

1. Respondent;
2. Special Prosecutor;
3. Chief of the Intelligence Division;
4. Chief of the Civil Security Unit;
5. Chief of the Immigration Regulation Division;
6. Chief of the Alien Registration Division;
7. Computer and Derogatory Section;
8. Office of the President;
9. Office of the Secretary, Department of Justice;
10. Embassy of the United States of America.

SO ORDERED.

AUG 1 6 2007

**BOARD OF COMMISSIONERS**

**MARCELINO C. LIBANAN**
*Commissioner*

**ROY M. ALMORO**
*Associate Commissioner*

**ENRIQUE B. GALANG, JR.**
*Associate Commissioner*

48

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX P COVER SHEET
DATE: 09/21/2021 02:44:40 PM

...

APPENDIX P

_____

U.S. Department of Justice Office of International Affairs - April 12, 2013

49

**U.S. Department of Justice**

Criminal Division
Office of International Affairs

Donato O. Ashley
Tel. (632) 301-2900 Ext. 6901
Facsimile: (632) 301-2010
Email: AshleyDO@state.gov

Embassy of the United States of America
1201 Roxas Blvd.
Ermita, Manila 0930
Philippines

April 12, 2013

*Via Air2GO*

Atty. Ricardo Valera Paras III
Chief State Counsel
Department of Justice
Padre Faura, Manila

Re:  Request for Legal Opinions from the Philippine Department of Justice

Dear Chief Paras:

The U.S. Attorney's Office for the Central District of California has charged U.S. citizen Stanley Dan Reczko with one count of producing child pornography in violation of U.S. criminal law.  The alleged victim is a Philippine national.  The trial in this case is currently set to begin on October 1, 2013, and will be held in Los Angeles, California.  Mr. Reczko is currently in custody pending trial.

The trial court has granted Mr. Reczko's request to apply to the Philippine government for permission take pre-trial depositions in the Philippines of Filipino residents who have expressed willingness to be deposed.  Under U.S. law, Mr. Reczko generally has a right to be physically present at such deposition, unless the trial court makes certain factual findings.  Because these factual findings require information outside the scope of our knowledge, we seek your assistance in obtaining answers from appropriate Philippine authorities regarding the following questions:

(1)  Will Mr. Reczko be allowed reentry into the Philippines under Philippine law?  With respect to this question, we advise that he was deported from the Philippines on August 17, 2007.  The Deportation Order noted that he was charged with being an undesirable alien and with being a fugitive from justice on July 6, 2007, that he is a registered violent sex offender, and that his name be included on the "Blacklist" upon implementation of the deportation order.  A copy of this order is attached.

*50*

GER 103

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-----------------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX Q COVER SHEET
DATE: 09/21/2021 02:46:21 PM

...

APPENDIX Q

_____

Email Between Assistant U.S. Attorney Gelber And ICE Agent Orate - August 21, 2007



**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

1      I, the undersigned, declare that I am the court appointed
2  paralegal assigned to assist the pro se defendant, Stanley Dan
3  Reczko, and at his direction I have served the following
4  document:
5      On October 29, 2014 I served the foregoing document
6  described as DEFENDANT STANLEY RECZKO'S NOTICE OF MOTION AND
7  MOTION REQUEST FOR JUDICIAL INVESTIGATION INTO PROSECUTORIAL
8  MISCONDUCT AND REQUEST FOR DISMISSAL OF THE INDICTMENT on
9  interested parties in this action by placing a true copy thereof
10 enclosed in a sealed envelope addressed as follows:

Joey L. Blanch, Esq.,
Vanessa Baehr-Jones, Esq.
Office of the United States Attorney
312 No. Spring Street, 12ᵗʰ Floor
Los Angeles, CA 90012;

11

12 ( ) VIA FACSIMILE - I faxed the attached document entitled
13                      to
14     fax phone number          .
15

16 [X] I deposited the above named item(s) in the mail at West
17     Covina, California.

18     I declare under penalty of perjury under the laws of the
19 State of California that the above is true and correct.

20     Executed on October 29, 2014 at Los Angeles, California.

21
22
23                         _Kathleen Caulfield_
24                         KATHLEEN CAULFIELD
25
26
27
28

52





EXHIBIT A

DEFENDANT'S MOTION JUDICIAL INVESTIGATION OF PROSECUTORIAL MISCONDUCT
- 2 -

*53*

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

---------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX R COVER SHEET
DATE: 09/21/2021 02:49:31 PM

...

APPENDIX R

—————

Emails - U.S. State Department at U.S. Embassy In Manila With ICE Attache - September 5, 10, 11, 12, 2007

(NO ARREST WARRANT YET)

54

**From:** Orate, Dante (Manila)
**Sent:** Wednesday, September 12, 2007 5:11 PM
**To:** Tiongco, Jocelyn D (Manila); Briola, Julian S (Manila); Lopez, Theodore C (Manila)
**Cc:** Daetwyler, Linda E (Manila); Kho, Elizabeth T (Manila); Cairo, Mary Rose B (Manila); Antipino, Mark John D (Manila); Cairo, Mary Rose B (Manila); Calubayan, Sheila I (Manila); Kho, Elizabeth T (Manila); Delluta, Jasmin C (Manila); Manalang, Sigrid T (Manila); Jimenez, Richmond Patrick L (Manila)
**Subject:** RE: Stanley Reczko III - confirmed flight on Sept 12

This will be a cliff-hanger. He will be at the LAX airport by our people. Hopefully, they'll have his arrest warrant signed by then. We will forward his personal effects to los angeles. At the end of the day, all of his personal effects with no evidentiary value will be returned to him. His passport will be pouched all the way to Los Angeles by airline officials. Hongkong will not allow him to exit the transit lounge either. Thanks All!

-----Original Message-----
**From:** Tiongco, Jocelyn D (Manila)
**Sent:** Wednesday, September 12, 2007 4:47 PM
**To:** Orate, Dante (Manila); Briola, Julian S (Manila); Lopez, Theodore C (Manila)
**Cc:** Daetwyler, Linda E (Manila); Kho, Elizabeth T (Manila); Cairo, Mary Rose B (Manila); Antipino, Mark John D (Manila); Cairo, Mary Rose B (Manila); Calubayan, Sheila I (Manila); Kho, Elizabeth T (Manila); Delluta, Jasmin C (Manila); Manalang, Sigrid T (Manila); Jimenez, Richmond Patrick L (Manila)
**Subject:** RE: Stanley Reczko III - confirmed flight on Sept 12

I just received a call from subject, he said he is now at the airport waiting for his flight at 1755H.

He was escorted by BI officials. He is inquiring about his stuff that was confiscated from him at the time of his arrest, I told him that DHS ICE only had in custody was his US passport which was turned over to Phil BID. He said someone should be responsible for his things especially his mobile phone because it is owned by his US company, he will inquire with his BI escorts regarding this.

Also, yesterday, he called requesting that I do a search for a federal warrant, I told him that I am not aware of any federal warrant and did not promise him that I wll do a search.

Again, flight schedule is as follows:

September 12, Wednesday
CX 918
Manila - Hong Kong
1755H - 2000H

September 12, Wednesday
CX880
Hong Kong - Los Angeles
2335H - 2150H

Joy

**From:** Tiongco, Jocelyn D (Manila)
**Sent:** Tuesday, September 11, 2007 8:45 AM
**To:** Orate, Dante (Manila)
**Cc:** Briola, Julian S (Manila); Daetwyler, Linda E (Manila); Kho, Elizabeth T (Manila); Cairo, Mary Rose B (Manila); Lopez, Theodore C (Manila); Antipino, Mark John D (Manila); Cairo, Mary Rose B (Manila); Calubayan, Sheila I (Manila); Elizabeth Kho; Jasmin Delluta; Manalang, Sigrid T (Manila); Richmond Jimenez
**Subject:** RE: Stanley Reczko III - confirmed flight on Sept 12

Please be advised that subject's valid US passport and Cathay Pacific ticket were forwarded to Bureau of Immigration's Law and Investigation Division.

55

At first, BI was hesitant to receive the travel documents because of the information they received that subject is a federal fugitive. I informed Commissioner Libanan and Atty. Ty that we currently do not have an existing warrant for subject's arrest, therefore, we cannot deny subject's departure from the Philippines unescorted. In the event that a warrant of arrest is issued before subjects' departure, BI officials will be notified immediately.

Joy

| | |
|---|---|
| **From:** | Orate, Dante (Manila) |
| **Sent:** | Monday, September 10, 2007 10:07 AM |
| **To:** | Tiongco, Jocelyn D (Manila) |
| **Cc:** | Briola, Julian S (Manila); Daetwyler, Linda E (Manila); Kho, Elizabeth T (Manila); Cairo, Mary Rose B (Manila); Lopez, Theodore C (Manila) |
| **Subject:** | RE: Stanley Reczko III - confirmed flight on Sept 12 |

As of this morning, there's no change on the status quo. He will return unescorted. However, things still may change by the 12th. We are still working on getting an arrest warrant. Thanks!

-----Original Message-----
**From:** Tiongco, Jocelyn D (Manila)
**Sent:** Monday, September 10, 2007 9:04 AM
**To:** Orate, Dante (Manila)
**Cc:** Briola, Julian S (Manila); Daetwyler, Linda E (Manila); Kho, Elizabeth T (Manila); Cairo, Mary Rose B (Manila)
**Subject:** FW: Stanley Reczko III - confirmed flight on Sept 12
**Importance:** High

Mr. Orate - have we heard anything regarding subject's status? Will he be escorted back to the US?

For the meantime, subject's return flight on September 12 is confirmed, see below details

September 12, Wednesday
CX 918
Manila - Hong Kong
1755H - 2000H

September 12, Wednesday
CX880
Hong Kong - Los Angeles
2335H - 2150H

Subject's ticket and valid US passport will be forwarded to BI Legal office this afternoon at around 2:30pm.

Joy

| | |
|---|---|
| **From:** | Howe, Sharon A (Manila) |
| **Sent:** | Wednesday, September 05, 2007 12:23 PM |
| **To:** | Tiongco, Jocelyn D (Manila) |
| **Subject:** | FW: Stanley Reczko III |

FYI

Thanks,
--Sharon

13691

56

TRULINCS 45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

-------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX S COVER SHEET
DATE: 09/21/2021 02:51:09 PM

...

APPENDIX S

_____

U.S. Criminal Complaint Adopting IJM Actions From May 10, 2007 To September 12, 2007

AO 91
Rev. 11/82

Case 2:07-mj-01520-DUTY   Document 1   Filed 09/12/07   Page 1 of 11   Page ID #:1

CRIMINAL COMPLAINT

ORIGINAL

LODGED

UNITED STATES DISTRICT COURT    CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA<br>v.<br><br>STANLEY DAN RECZKO, III, | DOCKET NO. |
|---|---|

2007 SEP 12 PM 3:50

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

MAGISTRATE'S CASE NO.

07-1520M

Complaint for violation of Title 18, United States Code §§ 2251(c) and 2260(a)

| NAME OF MAGISTRATE JUDGE<br>PATRICK J. WALSH | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, CA |
|---|---|---|
| DATE OF OFFENSE<br>Between November 11, 2006 and March 2007 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |

CLERK, U.S. DISTRICT COURT
SEP 12 2007
CENTRAL DISTRICT OF CALIFORNIA
BY

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

Between on or about November 11, 2006, and in or about March, 2007, defendant STANLEY RECZKO, III, knowingly employed, used, persuaded, induced, enticed, and coerced a minor girl to engage in sexually explicit conduct, as that term is defined in Title 18, United States Code, Section 2256(2), outside of the United States, its territories or possessions, namely in the Philippines, for the purpose of producing a visual depiction of such conduct, and defendant STANLEY DAN RECZKO, III intended such visual depiction to be transported and imported to the United States, by any means, and defendant STANLEY DAN RECZKO, III transported such visual depiction to the United States, namely to the Central District of California.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
    (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>OLGA SAGALOVICH |
|---|---|
| | OFFICIAL TITLE<br>Special Agent-Immigration of Customs Enforcement |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>HONORABLE PATRICK J. WALSH | DATE<br>September 12, 2007 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

PAD:rig        REC: DETENTION
FD

58

# AFFIDAVIT

I, OLGA SAGALOVICH, being duly sworn, do hereby depose and state:

## I.  INTRODUCTION

1.      I am a Special Agent ("SA") with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") and have been so employed since September of 2004.  ICE was created in 2003 by combining the former investigative functions of the Immigration and Naturalization Service and the United States Customs Service. I received training at the Federal Law Enforcement Training Center located in Glynco, Georgia relating to child pornography/child exploitation cases.  During the course of my employment with ICE, I have investigated cases involving narcotics smuggling, human smuggling, fraud, and child pornography.  During the investigation of these cases, I have participated in the execution of search and arrest warrants, and seized evidence in violation of United States law.  ICE is responsible for enforcing federal criminal statues involving, but not limited to, the sexual exploitation of children under Title 18, United States Code, Section 2251, et seq.

2.      This affidavit is made in support of criminal complaint and arrest warrant charging STANLEY DAN RECZKO, III with violating Title 18, United States Code, Sections 2251(c) and 2260(a).  Section 2251(c) states:

>       (1)  Any person who, in a circumstance described in paragraph (2), employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct outside of the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct, shall be punished as provided under

1

*5 9*

subsection (e).

(2) The circumstance referred to in paragraph (1) is that —

(A) the persons intends such visual depiction to be transported to the United States, its territories or possessions, by any means, including by computer; or

(B) the person transports such visual depiction to the United States, its territories or possessions, by any means, including by computer or mail.

Section 2260(a) states:

A person who, outside the United States, employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor with the intent that the minor engage in any sexually explicit conduct, for the purpose of producing any visual depiction of such conduct, intending that he visual depiction will be imported in the United States or into waters within 12 miles of the coast of the United States, shall be punished as provided in subsection (c).

The terms "minor," "visual depiction," and "sexually explicit conduct," are defined in 18 U.S.C. §§ 2256(1), (2), and (5).

3.      The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement officers.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

60

4.      To the extent that any information in this affidavit is not within my personal knowledge, it was made known to me through reliable law enforcement sources, and I believe it to be true.

### III. INVESTIGATION

5.      On August 2, 2007, SDR, a Philippine National and 17 year old minor, born in March 1990, was interviewed by Department of Homeland Security, Immigration and Customs Enforcement Senior Special Agent Dante Orate in Cebu, Philippines.  This interview concerned allegations that she was sexually exploited by STANLEY DAN RECZKO, III, a United States citizen, with a last known address in Los Angeles, California.  Although SDR understands and is conversant in English, she was sometimes aided by Philippine National Police officer Shirley Montalban.  Unless otherwise indicated below, all statements made by SDR were made during this interview.  SDR stated the following:

6.      According to SDR, in May 2004, RECZKO attempted to telephonically contact SDR's older sister, JDR in Cebu, Philippines from the United States.  SDR answered the phone. RECZKO had introduced himself as "Danny", a friend of "Stanley", an "internet boyfriend" of one of JDR's friends in Cebu.  "Stanley" and "Danny" are, in fact, one and the same person. RECZKO, posing as Danny, asked SDR her age.  She indicated that she was 14 years old. RECZKO told her she was young and asked her to address him as "Uncle."  RECZKO and SDR started communicating via telephone.

7.      About their third telephone conversation, RECZKO, still using the first name "Danny" told SDR that he liked her as his "niece", indicating again to address him as "Uncle."

3

6 1

RECZKO said he would bring her to the United States after "Stanley" married her older sister, JDR.

8.      In or about about August 2004, when SDR was fourteen-years-old, RECZKO (posing as "Danny") called SDR and persuaded her to engage in phone sex. RECZKO instructed her to insert her finger in her genitalia and play with herself. Around the same time that this conversation took place, SDR mentioned a school project. RECZKO volunteered to send her money to be used for that school project. RECZKO sent her two thousand pesos (about $36 US) via Western Union.

9.      According to SDR, between August 2004 and November 2005, RECZKO had three "phone sex" conversations with her.

10.     On November 22, 2005, RECZKO arrived in Cebu, Philippines from Los Angeles, California via Taipei. A review of RECZKO's U.S. Passport indicates a Philippine Immigration admission stamp on this date. Eva Airways reported that RECZKO departed Los Angeles for Taipei onboard BR flight 15 on November 20, 2005.

11.     Upon arrival in Cebu, RECZKO went to SDR's residence. RECZKO then invited SDR's family to his hotel room at the Marriott. According to SDR, that night, RECZKO shared the same bed with her and her older sister, JDR. RECZKO slept next to SDR and fondled her that night. In a later interview, JDR acknowledged that she saw RECZKO sexually fondling her younger sister in bed that night.

12.     On November 23, 2005, RECZKO traveled with SDR and her family to a nearby island, Butuan, Agusan on Mindanao Island. RECZKO bought SDR lingerie which he wanted her to wear. RECZKO, SDR, JDR and JDR's baby all slept in the same room. According to

SDR, now aged fifteen, RECZKO played with her genitalia and asked her when she would give up her virginity to him. SDR promised December 6.

13.     On December 6, 2005, after RECZKO presented SDR with an engagement ring, SDR stated that she reluctantly had sex with RECZKO at the Cebu Grand Hotel in Cebu City. According to SDR, RECZKO took pictures of her in Capri pants and a bra. RECZKO had planted a kiss on her breast before taking pictures. A review of Cebu Grand Hotel records showed that RECZKO checked in at room 419 on 12/03/05 and checked out on 12/7/05). A review of RECZKO's U.S. passport revealed Philippine Immigration exit stamp dated 12/12/05.

14.     According to SDR, on January 21, 2006, RECZKO returned to Cebu, Philippines from Los Angeles, California. On this trip, RECZKO brought a dildo/vibrator for her. A review of RECZKO's passport revealed a Philippine Immigration admission stamp on this date. Philippine Airlines reported to Customs Border Protection that RECZKO departed Los Angeles for Manila onboard PR 103 on 01/20/06.

15.     According to SDR, on January 31, 2006, she and RECZKO were married by a local judge after RECZKO paid 10,000 pesos to the judge. During a telephonic conversation with RECZKO on 07/23/07, RECZKO acknowledged to SSA Orate that he married SDR on this date. However, according to U.S. Immigration records, RECZKO married a Filipina woman named Richelle Ibay Reczko in the United States nearly a year earlier, on February 11, 2005. When asked whether he was legally divorced from Richelle, RECZKO responded, " I think so." When asked whether he signed any divorce papers, he responded, "I signed papers."

5

63

16.     Between January 21, 2006, and January 31, 2006 (the date of their purported wedding), RECZKO took sexually explicit photos of SDR, using his Nikon camera which he brought on this trip.

17.     Prior to their wedding on January 31, 2006, a government social worker had explained to RECZKO and SDR that their marriage would be invalid since SDR was still under the legal age of 18.  The marriage would only become valid when SDR turned 18 years old.  According to SDR, her parents agreed to this arrangement as an alternative to SDR and RECZKO living together, in light of the shame they felt in the eyes of their neighbors.  Neither SDR nor her family were aware that the marriage was also invalid since RECZKO was still legally married to Richelle.

18.     According to SDR sometime between January 31, 2006, and March 23, 2006, she thought she was pregnant because she had missed her menstrual period.  RECZKO remarked to her that if they had a baby girl, he would bathe her and finger her genitalia.  If they had a baby boy, SDR would fellate him.  SDR reiterated to Senior Special Agent Orate during a telephonic interview on 09/10/07 that RECZKO would make this remark every time she thought she was pregnant.  Before RECZKO departed the Philippines for Los Angeles, California on March 23, 2006, SDR experienced a miscarriage.  A review of RECZKO's U.S. passport revealed a Philippine exit stamp on 03/23/06.  Cathay Pacific Airways records indicate RECZKO arrived in Los Angeles onboard CX 882 on 03/23/06.

19.     Between November 11, 2006, and November 30, 2006, RECZKO again visited SDR in Cebu.  SDR was now 16 years old.  According to SDR, RECZKO brought his Canon and Nikon cameras with him on this trip.  During this visit, RECZKO took sexually explicit photos

64

of her.  During a telephonic interview on 09/10/07, SDR reiterated to SSA Orate that she had

observed RECZKO download the photos from the cameras to a laptop computer which

RECZKO possessed.  Subsequently, in late November RECZKO returned to the United States

taking the laptop with him. According to SDR, RECZKO promised to burn her a CD copy in the

United States of all the photos he had taken of her including sexually explicit photos, since they

had met.  (A review of RECZKO's U.S. Passport revealed Philippine Immigration Entry stamp

on 11/11/2006 and Philippine Exit stamp on 11/20/2006.)

     20.     During a telephonic interview on 09/10/07, SDR related to SSA Orate that, on or

about December 20, 2006, RECZKO acknowledged to her during a telephone conversation that

he had completed burning her a CD copy of the photos that he had taken of her as promised.

     21.     SDR related to SSA Orate that shortly after RECZKO returned to the Philippines

from the United States in March of 2007, RECZKO gave her a Compact Disc labeled "Baby

Girl" which contained the sexually explicit images RECZKO had taken of SDR.  RECZKO also

provided some printed copies of the sexually explicit images.  SDR also indicated that when

RECZKO arrived, he was carrying his laptop with him.  A review of RECZKO's U.S. passport

revealed Philippine Immigration Entry stamp on 03/15/07.

     22.     According to SDR, on or about April 14, 2007, RECZKO assaulted her following

an argument over his association with other girlfriends.  At that time, SDR reported his abuse to

the Philippine National Police (PNP) and broke off relationship with RECZKO.  When

RECZKO left for Manila on or about April 2007 with his laptop and cameras, he left behind

some of his personal effects including a suitcase.

     23.     On or about May 10, 2007, according to SDR, she approached the International

65

Justice Mission (IJM), a human rights non-government organization, in Cebu for assistance. She then turned over her Compact Disc copy labeled "Baby Girl" to IJM. IJM subsequently turned over the CD to ICE Senior Special Agent Julian Briola on May 24, 2007 along with a chain of custody form. On this Compact Disc, RECZKO saved at least four folders containing photos of SDR depicted in sexually explicit conduct. The folder names are "Philippines," "Sasi", "Hot Mami," and "Sexy [SDR]."

24.     The Compact Disc labeled "Baby Girl" contains over 100 nude and sexually explicit photographs of SDR and RECZKO. An examination of the data associated with those images reveal that they were taken between November 11, 2006, and November 30, 2006, using both a Canon Powershot A70 and a Nikon E995 camera.

25.     A review of image "Philippines 043," date-time stamped November 12, 2006, 4:47pm, and taken with a Canon camera, depicts SDR in the nude while RECZKO touches his tongue to SDR's left breast.

26.     A review of image "Philippines 045," date-time stamped November 12, 2006, 5:00 pm, , depicts SDR fellating an adult man's penis.

27.     A review of image "Philippines 105," date-stamped November 15, 2006, 4:35 pm, depicts SDR partially nude standing beside an adult man with an erect penis.

28.     A review of image "Philippines 111," date-stamped November 15, 2006, 4:40 pm, , depicts an adult penis penetrating a female genitalia, believed to be RECZKO's penis and SDR's genitalia.

29.     A review of image "Philippines 021," date-stamped November 18, 2006, 2:03 pm, , depicts SDR with a dildo/vibrator in her genitalia. According to SDR, she had no recollection

66

of this photo ever being taken as she was intoxicated from liquor given to her by RECZKO. She learned this photo as taken the following day when it was shown to her. The dildo/vibrator she had used was the same one that RECZKO had brought to Cebu from the United States, during his January 2006 visit.

30.   A review of image "DSCN0004," date-stamped November 27, 2007, 9:16AM, using a Nikon E995 camera, depicts SDR in the nude.

31.   A review of image "DSCN0110," date-stamped December 10, 2006, using a Nikon E995 camera, depicting a skyline of Los Angeles. The Nikon Camera and memory stick used to store DSCN0004 were also used to snap and store DSCN0110.

32.   On or about June 12, 2007, Senior Special Agent Julian Briola informed the Philippine Immigration authorities that STANLEY DAN RECZKO, III, had a prior sexual felony conviction in the United States for the rape of a 14 year old minor, and was recently accused of having sexually exploited a local minor in Cebu, i.e., SDR.

33.   On June 22, 2007, the Philippine Immigration Commissioner signed an order for the arrest of STANLEY DAN RECZKO, III.

34.   On July 2, 2007, STANLEY DAN RECZKO, III was apprehended by Philippine Immigration authorities in Dumaguete City, Negros Oriental, Philippines.

35.   On or about August 17, 2007, Philippine Immigration Commissioner signed a summary deportation order of RECZKO back to the United States.

36.   On September 10, 2007, the American Citizens Services of the United States Embassy in Manila informed Senior Special Agent Dante Orate that STANLEY DAN RECZKO, III was scheduled to be deported from the Philippines to the United States on September 12,

2007 onboard Cathay Pacific flight 918 via Hongkong; connecting on Cathay Pacific flight 880

to Los Angeles, California.  The flight is scheduled to arrive in Los Angeles, California, at

approximately 10:00 p.m. on September 12, 2007.

OLGA SAGALOVICH
Special Agent
United States Department of Homeland Security
Immigration & Customs Enforcement

SUBSCRIBED TO AND SWORN BEFORE ME
THIS _12_ DAY OF SEPTEMBER, 2007

HONORABLE PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

10

68

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

----------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX T COVER SHEET
DATE: 09/21/2021 02:52:53 PM

...

APPENDIX T

_____

U.S. Indictment Filed/Signed/Authenticated/Non-Fabricated - November 2, 2007

69

FILED

2007 NOV -2 PM 4:06

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2007 Grand Jury

| UNITED STATES OF AMERICA, | ) | CR No. 07- **CR07-01221** |
|---|---|---|
| Plaintiff, | ) | I N D I C T M E N T |
| v. | ) | [18 U.S.C. § 2423(b): Travel with Intent to Engage in Illicit Sexual Conduct; 18 U.S.C. § 2423(c): Engaging in Illicit Sexual Conduct in Foreign Places; 18 U.S.C. § 2260A: Penalties for Registered Sex Offenders] |
| STANLEY DAN RECZKO, III, | ) | |
| Defendant. | ) | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. §§ 2423(b), 2260A]

On or about November 20, 2005, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

JJL:jjl

# TABLE OF CONTENTS (continued)

**DESCRIPTION**                                                      **PAGE**

## VOLUME IX [UNDER SEAL]

67. GOVERNMENT'S STATUS REPORT [UNDER SEAL],
    filed January 29, 2013,
    Docket No. 518 ........................................................ 1674

68. GOVERNMENT'S SENTENCING POSITION,
    filed April 29, 2015,
    Docket No. 1128 ....................................................... 1740

69. FAERSTEIN REPORT,
    September 23, 2009, ................................................... 1784

70. FAERSTEIN REPORT,
    December 22, 2011, ................................................... 1793

71. HOPE REPORT,
    May 24, 2012, ......................................................... 1803

72. HOPE REPORT,
    July 23, 2013, ........................................................ 1829

73. LODGING RE FAERSTEIN REPORT,
    August 13, 2013, ...................................................... 1838

COUNT TWO

[18 U.S.C. §§ 2423(b), 2260A]

On or about January 20, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

2

COUNT THREE

[18 U.S.C. §§ 2423(b), 2260A]

On or about November 9, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant STANLEY DAN RECZKO, III, a United States citizen and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California, to the Philippines, for the purpose of engaging in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

3

72

GER 3

Case 2:07-cr-01221-GHK   Document 14   Filed 11/02/07   Page 4 of 5   Page ID #:51

                              COUNT FOUR

                    [18 U.S.C. §§ 2423(b), 2260A]

     On or about March 14, 2007, in Los Angeles County, within
the Central District of California, and elsewhere, defendant
STANLEY DAN RECZKO, III, a United States citizen and a person
registered as a sex offender, knowingly traveled in foreign
commerce, namely from Los Angeles, California, to the
Philippines, for the purpose of engaging in illicit sexual
conduct, as defined in Title 18, United States Code,
Section 2423(f), with a person under 18 years of age.

Case 2:07-cr-01221-GHK   Document 14   Filed 11/02/07   Page 5 of 5   Page ID #:52

COUNT FIVE

[18 U.S.C. §§ 2423(c), 2260A]

Between on or about November 22, 2005, and on or about April 27, 2007, defendant STANLEY DAN RECZKO, III, a citizen of the United States residing in Los Angeles, California, within the Central District of California, and a person registered as a sex offender, knowingly traveled in foreign commerce, namely from Los Angeles, California to the Philippines, and engaged in illicit sexual conduct, as defined in Title 18, United States Code, Section 2423(f), with a person under 18 years of age.

A TRUE BILL

/s/
_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Violent and Organized Crime Section

DANIEL A. SAUNDERS
Assistant United States Attorney
Deputy Chief, Violent and Organized Crime Section

JOHN J. LULEJIAN
Assistant United States Attorney
Violent and Organized Crime Section

5

74

GER 5

TRULINCS  45243112 - RECZKO, STANLEY DAN - Unit: TCP-D-B

--------------------------------------------------------------------------------------------------

FROM: 45243112
TO: Epstein, Maria
SUBJECT: APPENDIX U COVER SHEET
DATE: 09/21/2021 02:54:19 PM

...

## APPENDIX U

IJM Tax Return Form 990 2007 Showing Substantial U.S. Funding

| Form **990** | **Return of Organization Exempt From Income Tax** | | OMB No. 1545-0047 |
|---|---|---|---|
| | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation) | | **2007** |
| Department of the Treasury Internal Revenue Service | ▶ The organization may have to use a copy of this return to satisfy state reporting requirements. | | Open to Public Inspection |

**A** For the 2007 calendar year, or tax year beginning _____ and ending _____

| **B** Check if applicable: | Please use IRS label or print or type. See Specific Instructions. | **C** Name of organization **INTERNATIONAL JUSTICE MISSION** | | **D** Employer identification number **54-1722887** |
|---|---|---|---|---|
| ☐ Address change | | Number and street (or P.O. box if mail is not delivered to street address) **P.O. BOX 58147** | Room/suite | **E** Telephone number **703-465-5495** |
| ☐ Name change ☐ Initial return ☐ Termination ☐ Amended return ☐ Application pending | | City or town, state or country, and ZIP + 4 **WASHINGTON, DC  20037-8147** | | **F** Accounting method: ☐ Cash ☒ Accrual ☐ Other (specify) ▶ |

● **Section 501(c)(3) organizations and 4947(a)(1) nonexempt charitable trusts must attach a completed Schedule A (Form 990 or 990-EZ).**

**H** and **I** are not applicable to section 527 organizations.

**G** Website: ▶ **WWW.IJM.ORG**

**H(a)** Is this a group return for affiliates? ☐ Yes ☒ No
**H(b)** If "Yes," enter number of affiliates ▶ **N/A**
**H(c)** Are all affiliates included? **N/A** ☐ Yes ☐ No (If "No," attach a list.)
**H(d)** Is this a separate return filed by an organization covered by a group ruling? ☐ Yes ☒ No

**J** Organization type (check only one) ▶ ☒ 501(c) ( **3** ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**I** Group Exemption Number ▶ **N/A**

**K** Check here ▶ ☐ if the organization is not a 509(a)(3) supporting organization and its gross receipts are normally not more than $25,000. A return is not required, but if the organization chooses to file a return, be sure to file a complete return.

**M** Check ▶ ☐ if the organization is not required to attach Sch. B (Form 990, 990-EZ, or 990-PF).

**L** Gross receipts: Add lines 6b, 8b, 9b, and 10b to line 12 ▶ **20,295,444.**

## Part I  Revenue, Expenses, and Changes in Net Assets or Fund Balances

| | | | | |
|---|---|---|---|---|
| **1** | Contributions, gifts, grants, and similar amounts received: | | | |
| **a** | Contributions to donor advised funds | 1a | | |
| **b** | Direct public support (not included on line 1a) | 1b | 16,478,332. | |
| **c** | Indirect public support (not included on line 1a) | 1c | | |
| **d** | Government contributions (grants) (not included on line 1a) | 1d | 1,744,489. | |
| **e** | Total (add lines 1a through 1d) (cash $ 18,171,100. noncash $ 51,721.) | | | **1e** 18,222,821. |
| **2** | Program service revenue including government fees and contracts (from Part VII, line 93) | | | **2** 72,002. |
| **3** | Membership dues and assessments | | | **3** |
| **4** | Interest on savings and temporary cash investments | | | **4** 126,128. |
| **5** | Dividends and interest from securities | | | **5** 100,294. |
| **6 a** | Gross rents **SEE STATEMENT 1** | 6a | 82,046. | |
| **b** | Less: rental expenses | 6b | | |
| **c** | Net rental income or (loss). Subtract line 6b from line 6a | | | **6c** 82,046. |
| **7** | Other investment income (describe ▶ ) | | | **7** |

| **8 a** | Gross amount from sales of assets other than inventory | (A) Securities 1,226,703. | (B) Other 22,792. | 8a |
|---|---|---|---|---|
| **b** | Less: cost or other basis and sales expenses | 1,230,165. | 50,904. | 8b |
| **c** | Gain or (loss) (attach schedule) | <3,462.> | <28,112.> | 8c |
| **d** | Net gain or (loss). Combine line 8c, columns (A) and (B) **STMT 2  STMT 3** | | | **8d** <31,574.> |

| **9** | Special events and activities (attach schedule). If any amount is from gaming, check here ▶ ☐ | | | |
|---|---|---|---|---|
| **a** | Gross revenue (not including $ 1,680,064. of contributions reported on line 1b) | 9a | 345,342. | |
| **b** | Less: direct expenses other than fundraising expenses | 9b | 424,245. | |
| **c** | Net income or (loss) from special events. Subtract line 9b from line 9a **SEE STATEMENT 4** | | | **9c** <78,903.> |

| **10 a** | Gross sales of inventory, less returns and allowances | 10a | | |
|---|---|---|---|---|
| **b** | Less: cost of goods sold | 10b | | |
| **c** | Gross profit or (loss) from sales of inventory (attach schedule). Subtract line 10b from line 10a | | | **10c** |
| **11** | Other revenue (from Part VII, line 103) | | | **11** 97,316. |
| **12** | **Total revenue.** Add lines 1e, 2, 3, 4, 5, 6c, 7, 8d, 9c, 10c, and 11 | | | **12** 18,590,130. |

| Expenses | **13** | Program services (from line 44, column (B)) | | | **13** 12,150,089. |
|---|---|---|---|---|---|
| | **14** | Management and general (from line 44, column (C)) | | | **14** 1,687,124. |
| | **15** | Fundraising (from line 44, column (D)) | | | **15** 2,161,931. |
| | **16** | Payments to affiliates (attach schedule) **SEE STATEMENT 5** | | | **16** 40,050. |
| | **17** | **Total expenses.** Add lines 16 and 44, column (A) | | | **17** 16,039,194. |

| Net Assets | **18** | Excess or (deficit) for the year. Subtract line 17 from line 12 | | | **18** 2,550,936. |
|---|---|---|---|---|---|
| | **19** | Net assets or fund balances at beginning of year (from line 73, column (A)) | | | **19** 4,061,550. |
| | **20** | Other changes in net assets or fund balances (attach explanation) | | | **20** 0. |
| | **21** | Net assets or fund balances at end of year. Combine lines 18, 19, and 20 | | | **21** 6,612,486. |

723001 12-27-07   LHA   For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.   Form **990** (2007)

INTERNATIONAL JUSTICE MISSION                           54-1722887

FORM 990        STATEMENT OF PROGRAM SERVICE ACCOMPLISHMENTS        STATEMENT    7

DESCRIPTION OF PROGRAM SERVICE ONE

IJM CASEWORK - IJM'S MULTI-NATIONAL TEAM OF ATTORNEYS, LAW
ENFORCEMENT PROFESSIONALS AND TRAINED SOCIAL WORKERS CONDUCT
DETAILED INVESTIGATIONS OF VIOLENT ABUSES, BRING
PERPETRATORS TO JUSTICE UNDER LOCAL LAWS, PROVIDE CARE FOR
VICTIMS AND ENCOURAGE STRUCTURAL CHANGE TO PREVENT FUTURE
ABUSES. IN ADDITION, IJM PARTNERS WITH REPUTABLE AFTERCARE
FACILITIES TO ENSURE EFFECTIVE AND APPROPRIATE CARE THAT
MEETS THE VICTIMS' BROAD AND COMPLICATED NEEDS. IJM TAKES ON
CASEWORK IN SLAVERY, SEX TRAFFICKING, POLICE BRUTALITY,
ILLEGAL DETENTION, SEXUAL VIOLENCE AND ILLEGAL PROPERTY
SEIZURE. IJM OPERATES 14 FIELD OFFICES ALONG WITH 2 CASEWORK
ALLIANCES IN 12 COUNTRIES IN ASIA, AFRICA AND LATIN AMERICA.

BY DRIVING INDIVIDUAL CASES OF ABUSE THROUGH THE JUSTICE
SYSTEM FROM THE INVESTIGATIVE STAGE TO THE PROSECUTORIAL
STAGE, IJM IS UNIQUE IN ITS ABILITY TO IDENTIFY THE SPECIFIC
SOURCE OF CORRUPTION, LACK OF RESOURCES, OR LACK OF GOOD
WILL IN THE LOCAL SYSTEM THAT IS DENYING VICTIMS THE
PROTECTION OF THEIR LEGAL RIGHTS. IN COLLABORATION WITH
LOCAL AUTHORITIES, IJM ADDRESSES THESE SPECIFIC POINTS OF
BROKENNESS TO MEET URGENT NEEDS OF VICTIMS OF INJUSTICE.

|                              | GRANTS | EXPENSES |
|------------------------------|--------|----------|
| TO FORM 990, PART III, LINE A |        | 9,937,134. |

Defendant's Motion to Suppress DER 182
77